## M. F. PRICE & others vs. ABRAHAM ROSENBERG.

Worcester.    September 28, 1908. — October 21, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Contract*, Validity.  *Fraud.  Sale.  Estoppel.  Evidence*, Extrinsic affecting writings.  *Practice, Civil*, Exceptions.

If upon the solicitation of a salesman a person signs two order blanks for goods, one retained by the signer and the other taken away by the salesman, he can show, when sued by the principal of the salesman on his alleged contract contained in the blank taken away by the salesman, that the salesman falsely and fraudulently represented to him that the blank taken away by the salesman and afterwards attached to the declaration was the same as the blank retained by the defendant and that the defendant signed the blank attached to the declaration relying on this false and fraudulent representation, and these facts if shown are a good defense to the action.

In an action for the price of goods alleged to have been sold and delivered under the terms of a printed order blank signed by the defendant, in which the defense set up is that the defendant's signature upon the order sued upon was obtained by false and fraudulent representations of the plaintiff's salesman, if it appears that the defendant returned the goods sent to him by the plaintiff stating only that they were not what the plaintiff's salesman had agreed to send, this is not inconsistent with the position that the defendant's signature to the paper annexed to the plaintiff's declaration was procured by fraud and therefore that the paper is not the contract really made between the parties.

In an action for the price of goods alleged to have been sold and delivered under the terms of an order blank signed by the defendant, in which the defense set up is that the defendant's signature to the instrument sued upon was obtained by fraud on the part of the plaintiff's salesman, the defendant may show by oral evidence that a different agreement was made between him and the plaintiff's salesman by word of mouth.

In an action for the price of jewelry alleged to have been sold and delivered under the terms of an order blank signed by the defendant, it appeared that the signature of the defendant to the order blank was procured by a salesman of the plaintiff, who exhibited samples of the jewelry named in the order blank, and the plaintiff testified that the jewelry delivered to the defendant was up to the samples furnished by the plaintiff to the salesman who dealt with the defendant. The defendant offered evidence to contradict this testimony which was admitted by the judge against the objection and subject to the exception of the plaintiff. The order blank signed by the defendant contained a provision called a "warranty and exchange obligation" clause, which terminated as follows: "The purchaser hereby waives all right to claim . . . that goods are not like sample . . . unless he has exhausted the terms of warranty and exchange." It was admitted that the defendant had not exhausted the terms of that clause. The plaintiff asked the judge to instruct the jury that by force of this clause the fact that the jewelry was not up to sample was of no consequence, and the judge gave this instruction. *Held*, that, when the plaintiff, as a part of his original case introduced in evidence his testimony that the jewelry delivered

was up to the sample shown to the defendant by his agent, he must be taken to have been proceeding at that time on the ground that the jewelry was up to sample, waiving his rights under the clause of the contract above described, and therefore that the plaintiff's exception to the admission of the defendant's evidence in contradiction was not well taken, and did not become good when the plaintiff changed his mind and asked for the instruction under the clause of the contract described above.

CONTRACT for goods sold and delivered under a contract contained in a printed form signed by the defendant, which is described in the opinion. Writ in the First District Court of Northern Worcester dated March 29, 1906.

The defendant's answer was (1) a general denial; (2) that the goods set forth in the schedule annexed to the declaration were never delivered to or accepted by him; (3) a specific denial of the genuineness of his signature [waived]; (4) that the contract declared on was not the entire contract entered into by him and that as a part thereof he ordered certain goods not specified therein which were not sent; (5) " and further answering the defendant says that if he signed the order, schedule or agreement annexed to the plaintiffs' declaration, he was induced to sign said agreement by the false and fraudulent representations of the plaintiffs that said order, schedule or agreement was in all respects the same as a certain order, schedule or agreement actually signed by the defendant, left with him and now in his possession, and that the said signature to the order, schedule or agreement attached to plaintiffs' declaration was obtained by said plaintiffs by trickery and sleight of hand "; (6) that the order attached to the plaintiffs' declaration had been altered in a material particular; (7) that if the defendant signed the order, a copy of which was attached to the declaration, it was upon the express condition that certain merchandise other than the articles scheduled should be sent to him as a part of the order and that said merchandise was not sent; (8) that the sale was by sample and that the goods did not correspond with the samples exhibited.

On appeal to the Superior Court the case was tried before *Wait,* J. During the plaintiffs' opening the defendant's counsel stated that the defendant would not rely upon the third paragraph of his answer denying the genuineness of his signature. The evidence at the trial is described in the opinion, where also

are stated the rulings of the judge to which exceptions were taken. The jury returned a verdict for the defendant; and the plaintiffs alleged exceptions.

*C. E. Tupper,* for the plaintiffs.

*J. A. Stiles,* for the defendant.

LORING, J.   On August 20, 1901, a travelling salesman of the plaintiffs called upon the defendant at his store in Gardner, Massachusetts.   The plaintiffs are manufacturers of jewelry in Iowa City, Iowa.   The defendant at that time was in the hardware business, although " he had handled jewelry about two years before when he was in the clothing business."

The defendant testified to what was said and done at his store on August 20.   The plaintiffs' salesman did not testify at the trial.

The defendant's story was that, after he had told the plaintiffs' agent that jewelry was not " in his line " and that he did not wish to buy; the agent asked leave to show his (the agent's) samples, and that on the defendant's consenting the agent spread them out on a counter in the rear of the defendant's store.   The agent had a list like that attached to the declaration, and the defendant examined the samples with the list.   The defendant then told the agent in substance that " things like ladies' rings and belt buckles and such stuff as this " he could not use, but that he carried " a line of silverware, spoons, knives and forks," and that if he would sell him spoons, knives and forks of the same quality as those made by Rogers he might give him an order.   To which the salesman answered : " It does not make any difference to us, so long as the order is for $250." The salesman then presented a printed order in blank like that annexed to the declaration.   " That they had some talk as to terms and that the printed order shown him was changed to correspond with the terms of their agreement in respect to the time and manner of payment; that the printed contract spoke about notes and that it was changed so that he was to pay by check instead of notes," and that the defendant told him to " strike out the articles I don't want, and be sure to send me the balance in silverware."   This the salesman agreed to do. A customer then came into the defendant's store and, in the words of the defendant, " I left him with the papers there to straighten out."   Later the salesman called him and said, " I

am very busy. I have to take the next train. Will you sign the contract?" The defendant then went to the rear of his store where the paper or papers were spread out on a counter. "I glanced it over, and noticed the items were crossed out, and I signed it." The defendant also testified: "I don't remember whether I signed both or not. I know I signed a paper, but don't remember whether I signed both. He slided them over like this (illustrating with the two papers on the stand), and he said, 'You kindly sign that.' And I signed that one, and he folded it up like this, the contract, and he took his in his pocket, and I took mine in my pocket and went to finish my business with a customer, and that is all I know about it."

There was evidence that the plaintiffs' salesman's statement that he was very busy and had to take the next train was not true. It appeared that the defendant did sign two printed blanks like that attached to the declaration.

The blank annexed to the plaintiffs' declaration, before any-thing was written in it, was as follows : It begins with the words "W. F. Main Co., Manufacturing Jewelers," as a head-ing. Beneath this is an offer by W. F. Main Company to give to the purchaser one hundred orders, each for twenty-five cents' worth of jewelry, to be distributed to persons buying one dollar's worth of jewelry of him. The contract then proceeds as follows :

" Warranty and Exchange Obligation : — Any jewelry in this assortment failing to wear satisfactorily will be duplicated free of charge if returned to us within five years. Jewelry can be exchanged for new jewelry in plated, filled or solid gold any time within twelve months from date of invoice. The purchaser hereby waives all right to claim failure of consideration, or that goods are not like sample, or not according to order; unless he has exhausted the terms of warranty and exchange.

" Profit Guarantee. — We guarantee that the gross profits to the purchaser from the sale of jewelry purchased hereunder and the jewelry hereafter purchased, as hereinafter provided, will average fifty-four dollars per year for three years from the date of shipment, and if the gross profits do not average fifty-four dollars per year we will pay by draft to the purchaser an amount sufficient to make up the deficiency, under the following

conditions: First, that the purchaser settle for the goods as herein provided, and if the settlement is by note, pay the same when due.    Second, that the purchaser buy from us from time to time, at least quarterly, either directly or from our salesman, sufficient new jewelry at the prices named in this order to keep the assortment up in value to the amount of this order.    Third, that purchaser keep a complete and accurate record of all goods sold, which record must show the number of the article sold, and the cost price, the price at which it is sold, and the name and post-office address of the buyer, and that a copy of said record, together with an itemized inventory of the jewelry remaining on hand unsold, be sent by registered letter at the end of each year to us.    Fourth, that purchaser keep the jewelry well and tastily displayed in his store, in the showcase furnished for that purpose. Fifth, that purchaser will not sell or dispose of any article of jewelry at a less profit above the cost price as listed on this agreement, than is usually made on jewelry.

"Following is a list of Goods and terms for our $250.00 order.

"Positively No goods on Commission or Open Account.    This Sale is Made under Inducements and Representations Herein Expressed and No Other.    Goods Delivered to Customer when Delivered to Transportation Company.

"Terms:—Net cash, 30 days.    Accounts past due subject to sight draft without further notice.    Discount, 6 per cent., cash in 10 days.    A credit of more than 30 days is only allowed where account is closed in 10 days by note, on two, four, six, eight and ten months, without interest, each for one fifth of bill. This order is subject to approval at Iowa City, Iowa."

Then follows a list of jewelry under twenty-three different headings.    The jewelry under one heading, — "Collar Buttons," — is as follows:

"Collar Buttons

| | | | |
|---|---|---|---|
| "2 Dozen bell post | $ 02 | $ | 48 |
| 4 Dozen gold plate | 03 | 1 | 44 |
| 4 Dozen rolled gold plate | 04 | 1 | 92 |
| 4 Dozen heavy rolled plate, full finish | 12½ | 6 | 00 |
| 1 Dozen gold filled, hand engraved or stone set lever top | 25 | 3 | 00 |
| 4 Dozen rolled gold plate, lever | 07 | 3 | 36 " |

The prices of all the jewelry under the twenty-three several headings came to $250. To this was added a showcase, a table, two shelves and some trays valued at $24.75, which were deducted, leaving the price of the whole $250. Below are these words:

" W. F. Main Co., Iowa City, Iowa:   Post Office        190

" Gentlemen : — Please ship us the above assortment of goods in accordance with the above terms, at your earliest convenience.

Name of Salesman                    Name of Purchaser "

In both blanks signed by the defendant changes were made in the clause as to the terms of payment. In the one kept by the defendant lines were drawn through the following headings and through all the lines under them, namely : " Belt Buckles," " Filled Rings," " Chased Band Rings," " Friendship and Baby Rings " and " Set Rings." A line was also drawn through the words : " Gentlemen : — Please ship us the above assortment of goods in accordance." In this printed blank kept by the defendant nothing was substituted for these items stricken out amounting to $69.10, and no change was made in the footing of $250 as the price of the articles specified.

There were no changes in the printed order taken away by the salesman except the changes as to the terms of payment.

The plaintiffs introduced evidence that they shipped to the defendant the articles specified in the printed order signed by the defendant and kept by their salesman ; and that on September 9, 1901, the defendant wrote to the plaintiffs that he returned the jewelry sent because it was not what their salesman agreed to send. Later the plaintiffs sent to the defendant a copy of the order returned to them by their salesman. The defendant then wrote that this did not agree with his copy, and requested them to ask their salesman " what assortment of jewelry he agreed to send." In two subsequent letters the defendant pointed out that the plaintiffs had not asked their salesman this question. In the last of these letters he wrote : " This is the article he agreed to send me, Cuf. Buttons, Collar Buttons, Men's Watch Chains, Silver Spoons Knives and Forks, & Tea Spoons, and to leave out the watches, Rings, Buckles, Belt." The correspondence ended by a letter from the defendant dated October 26, 1901,

in which he said: "I have explained you enough, what kind of an assortment I bought of your Mr. Schweriner, and I have nothing more to say. Don't write me any more letter, just save your stamps, for I shall not answer." On March 29, 1906, the writ in this case was sued out.

At the close of the evidence the plaintiffs asked for the following rulings: "First. That the plaintiffs were entitled to recover on all the evidence. Second. That on all the evidence the defendant showed no grounds of defense. Third. That on all the evidence the defendant showed no fraud or trickery or sleight of hand in procuring the contract. Seventh. That the plaintiffs were entitled at least to recover for the amount of the contract less the amount of the goods which were stricken out of the schedule." These were refused by the presiding judge. In place of giving these rulings the presiding judge instructed the jury that the defendant was bound by his signature to the blank produced by the plaintiffs if it was not procured by fraud; but "if a different contract was substituted fraudulently, the defendant can defend against it in this case, and that is the contract that is sued on in this case; that is the one the plaintiffs must recover on, if at all, here. He may be able to sue, gentlemen, on the second contract, if that was entered into without fraud, but that is not his case here. His case is: You signed this particular contract, and you are liable on it. Now if he did and his signature was not secured by fraud, the defendant is liable. But if he was induced to sign it by fraud (his signature obtained to one paper, and not negligently but as a result of fraud he was signing a different contract from what he thought he was), then he is not bound by it."

At the argument of the case in this court the defendant's counsel took a position which does not seem to have been taken at the trial. That position is that the blank signed and kept by the defendant was not intended to become and never became a contract at all. That the purpose and effect of striking out the words "Gentlemen, please ship us assortment of goods in accordance" was to make that blank a memorandum of some of the articles which were verbally bought and sold, and of the terms on which the articles there specified together with the silver spoons, knives, forks and teaspoons substituted for those

stricken from the blank were bought and sold by word of mouth. The position is well taken, and if it had been taken in the pleadings and at the trial much confusion would have been avoided. A great deal of confusion was injected into the case by the defendant's assuming in his pleadings and at the trial that the blank kept by the defendant was a contract.

It is enough to say now that the rulings asked for and stated above were not based upon the pleadings, that we are of opinion that the jury were warranted in finding that the plaintiffs' salesman falsely and fraudulently represented to the defendant that the blank since attached to the declaration was the same as the blank kept by the defendant, and that the defendant signed it relying thereon. " Fraud may be proved from the acts and conduct of a party quite as effectively as from their declarations." In our opinion a case of fraud was made out within the rule laid down in *McNamara* v. *Boston Elevated Railway,* 197 Mass. 383. See *Trambly* v. *Ricard,* 130 Mass. 259; *Freedley* v. *French,* 154 Mass. 339. It follows that the exceptions to the refusal to give the first, second, third and seventh rulings asked for must be overruled.

The plaintiffs also asked the judge to instruct the jury that " The defendant if he is entitled to go to the jury is estopped from claiming any other defense than that claimed by him at the time of his return of the property received by him from the plaintiffs." In support of this ruling the plaintiffs have cited *Curtis* v. *Aspinwall,* 114 Mass. 187, and what was said by Knowlton, J., in *Brown* v. *Henry,* 172 Mass. 559, 567. As we understand the plaintiffs' contention in this connection it is that the defendant cannot now set up that his signature was procured by fraud because the only objection made was that the goods were not what he agreed to take. But there is no inconsistency in the defendant's asserting that his signature to the paper annexed to the plaintiffs' declaration was procured by fraud and therefore that that paper is not the contract between the plaintiffs and himself, and at the same time asserting that the goods sent do not fill the contract really made between them at that time.

There were also some exceptions to the admission and exclusion of evidence.

The judge was right in admitting in evidence a narrative of the facts leading up to the signing of the blank annexed to the declaration, including evidence of what the agreement was which was made by word of mouth. The fraud in obtaining the defendant's signature here in question could not otherwise have been proved.

As part of their evidence in chief, two of the plaintiffs testified that the jewelry delivered to the defendant was up to the samples furnished by them to their salesman who dealt with the defendant, as evidence that they were up to the samples on which the defendant's order was based. When the defendant offered evidence contradicting that, the plaintiffs objected, and on the evidence being admitted took an exception. They now urge that the evidence should not have been admitted because by force of the concluding part of the " warranty and exchange obligation " clause of the contract the fact that the goods delivered are not up to sample is no defense unless the purchaser has exhausted the terms of warranty and exchange, and it was admitted that the defendant had not exhausted the terms of that clause of the contract. But when the plaintiffs, as part of their original case, introduced in evidence testimony that the jewelry delivered was up to the sample shown to the defendant by their agent, they must be taken to have waived this clause in the contract. They had a right to waive their rights under that clause and to proceed on the ground that the jewelry was up to sample. In that state of the case the evidence was rightly admitted. Later the plaintiffs changed their minds and asked the judge to instruct the jury that by force of this clause the fact that the jewelry was not up to sample was of no consequence, and the judge did so. But that did not make the exception to the admission of this evidence good which was not well taken when the evidence was admitted.

The exception must also be overruled which was taken to the testimony of one Nathan. He was allowed to testify that the designation of the articles in the paper annexed to the declaration did not describe specific articles known to the trade, and that he could not fill such an order by those designations without further information. This testimony must be taken to have meant that such an order could not be filled without further in-

formation.  This evidence doubtless was admitted by the presiding judge before the plaintiffs abandoned their effort to prove that the goods delivered were up to sample.  It is nothing more than testimony to a fact which is obvious from an inspection of the face of the paper.  The plaintiffs cannot complain of its admission.

There was an exception to the ruling of the judge excluding this question to two of the plaintiffs : " You may state how you know that the goods which you delivered to the defendant were the identical goods called for in the contract order."  This evidence was rightly excluded.  It assumes that the goods delivered to the defendant were the goods called for in his contract.  Its exclusion, if it had been wrong, became immaterial when the judge at the plaintiff's request instructed the jury that this issue as to the goods being or not being up to sample was made immaterial by the " warranty and exchange obligation " clause.

The next question excluded by the court was as follows: " You may state whether or not the defendant has ever made any claim under the warranty or exchange obligatory clause as provided for in the contract order."  This would seem to have been excluded before the plaintiffs changed their minds and when they were trying the case on the basis that the goods were up to sample, that is to say, on the basis that their rights under the " warranty and exchange obligation " clause were waived.  In that state of the case the question was properly excluded.  In addition it became immaterial when the judge instructed the jury that no claim had been made under this clause of the contract.

The last question excluded was : " You may state whether or not the defendant has ever made any claim under the profit guarantee clause."  The answer expected was: " He has not."  How the plaintiffs would be benefited by the fact that. the defendant had not made any claim under that clause is not explained by their counsel in the argument.  We are of opinion that it was entirely immaterial.

*Exceptions overruled.*