WILLIAM J. BARRY *vs.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

Suffolk.    January 16, 17, 1912. — February 29, 1912.

Present: MORTON, HAMMOND, SHELDON, & DeCOURCY, JJ.

*Loan. Bills and Notes,* Delivery. *Agency. Equity Jurisdiction,* Fraud.

Where a lender of money has received the note of an applicant for a loan, and sends to an agent for delivery to the applicant a check payable to the applicant for the amount of the loan, and the agent takes the check to the applicant and, holding it face downward, fraudulently induces the applicant to indorse it under the belief that he is signing a voucher, and the agent cashes the check and absconds with the proceeds, the possession of the check never has passed to the applicant.

The holder of an endowment policy applied to the insurance company which issued it for a loan upon the security of his policy, and delivered to the company his policy and his note for the amount of the desired loan. The insurance company sent to one of its agents for soliciting insurance a letter addressed to the applicant for the loan, requesting a receipt and enclosing a check payable to such applicant for the amount of the loan applied for. The insurance company authorized the agent to deliver its letter and the check and "also to attend to certain other matters in connection with the delivery of the check." The agent took the check to the applicant and, holding it face downward, fraudulently induced the applicant to indorse it under the belief that he was signing a necessary voucher. The agent then cashed the check and absconded with the money. In a suit in equity by the applicant for the loan, seeking the return of his policy and the cancellation of his note, it was *held*, that it might be found to have been within the scope of the agent's special authority to take a receipt or voucher for the papers which he was to deliver and therefore that it was within the apparent scope of his authority to demand that the applicant should sign some voucher, and that on the evidence presented it could be found that the plaintiff was not guilty of such negligence as to bar him from recovery.

BILL IN EQUITY, filed in the Supreme Judicial Court as amended by a substitute bill on October 27, 1911, praying for an order for the return to the plaintiff of an endowment policy of life insurance for $5,000 issued to the plaintiff by the defendant and also for the return and cancellation of a note for $800 signed by the plaintiff, on which, with the policy as security, the defendant had agreed to lend that sum of money to the plaintiff.

The fourth paragraph of the bill alleged that the defendant had neglected and refused to pay or deliver to the plaintiff the sum of $770 or any part thereof.

The defendant's answer denied the allegations of the fourth paragraph of the bill and alleged that it had paid to the plaintiff the sum of $770 referred to and that it was entitled to retain the policy and the note.

The case was heard by *Morton*, J. Among other facts there was evidence of the following: On May 1, 1911, the plaintiff had applied to the defendant for a loan upon his policy. He gave the note in question and his policy to the defendant's loan clerk, who said to him, "You will hear from us in about a week." On the morning of Saturday, May 6, 1911, when the plaintiff was busy at his office at Waltham, he was called upon there by one Phinney, a soliciting agent of the defendant.

The defendant had sent by mail to Phinney a check for $770 payable to the plaintiff's order representing the amount of the loan with interest discounted. There was sent with it a letter addressed to the plaintiff requesting a receipt. The plaintiff testified in regard to his interview with Phinney as follows: "Mr. Phinney, an agent of the Mutual Life Insurance Company, came into my office, and stated that — I said to him — in the course of my talk I said, ' What can I do for you ?' — he was ushered into the private office, — and he said, 'I am Mr. Phinney of the Mutual Life of New York.' He said, ' You made an application for a loan from the company on your policy?' I said, ' Yes.' And he said, ' I brought out a voucher for you to sign.' And I said, ' All right.' And he pulled out the slide part of the desk, the leaf, and laid it right down there, and held it in his hand, with his four fingers on the four corners, and I signed it where he indicated, and then he says, ' I will bring you the check in two or three days, either Tuesday afternoon or Wednesday morning.' I said, ' All right, sir.'"

The plaintiff testified that he believed he was signing a voucher, that he had no reason to doubt the honesty of Phinney and that he "never dreamed but what" he was signing a voucher. The paper which Phinney held face downward for the plaintiff to sign was the check for $770. On leaving the plaintiff, Phinney immediately cashed the check and absconded with the money.

The justice made a memorandum of decision as follows:

" I do not think that the loss in this case should fall on the plaintiff. To begin with, Phinney was the defendant's agent, not Barry's. The check, though in a sealed envelope directed to Barry, was entrusted by the defendant to Phinney, to be delivered by him to the plaintiff. He was also to attend to certain other matters in connection with the delivery of the check. He did not deliver the check to the plaintiff, but, by means of a fraud practised upon him, converted the check and its proceeds to his own use. I do not think that what took place constituted a delivery of the check to the plaintiff, and I so find. The check never having been delivered to the plaintiff, the loss arising from Phinney's fraud should be borne by the defendant, unless the plaintiff's negligence, assuming that he was negligent, bars him from relief. I do not think that it does. If there was any negligence on his part, it was induced by Phinney's fraud while acting, as it seems to me, and as I find, within the apparent scope of his authority, and the defendant cannot, therefore, I think, set up the plaintiff's negligence in bar of his claim to relief. I find, if that is material, that the plaintiff was not culpably negligent in relying upon Phinney's representations. What Phinney did was not within the apparent scope of his authority as an agent for soliciting insurance. But the defendant reposed special confidence and authority in him in connection with the delivery of the check, and it is therefore immaterial that what he said and did was not within the apparent scope of his authority as an agent for soliciting insurance. I find that what purports to be the plaintiff's indorsement on the back of the check was procured by Phinney's fraudulent representations that what the plaintiff was writing his name upon was a voucher, and that the plaintiff did not know or believe, and had no reason to know or believe, was a check for the amount due him on the loan or for any other purpose, but believed that, according to Phinney's representations, it was some sort of a voucher required of him by the

company, preliminary to issuing a check for the amount coming to him on the loan. I think that there should be a decree for the plaintiff."

By order of the justice a final decree was entered ordering that the policy be returned to the plaintiff and that the note be delivered up to the plaintiff to be cancelled, and that the plaintiff recover costs in a sum named. The defendant appealed, the evidence being reported by a commissioner appointed under Chancery Rule 35.

*W. D. Turner,* for the defendant.

*F. D. Putnam,* for the plaintiff.

SHELDON, J. The only issues of fact raised by the defendant's answer are by its denial of the fourth paragraph of the bill and its averment that it has paid to the plaintiff the amount which it had agreed to lend to him. These issues have been decided adversely to the defendant, and we should not be justified in reversing the findings made by the single justice. We cannot say that the plaintiff's testimony is not to be believed, and on that testimony the possession of the check never passed from Phinney to the plaintiff. *Markey* v. *Mutual Benefit Life Ins. Co.* 103 Mass. 78, 79.

The only remaining question is whether on these findings the plaintiff is entitled to the relief asked for. Phinney was the defendant's agent to deliver its letter and check to the plaintiff. This was to be sure a limited agency; but within its apparent scope, though no further, the case stood as if it had been the defendant itself, acting through its most general agent, that had undertaken to make the delivery. Phinney might well have been authorized by the defendant to take a receipt or voucher for the papers which he was to deliver. The defendant plainly did not intend that the plaintiff should receive its check until the defendant should have received from him whatever paper it required to show the nature of the transaction and the security it was to have for the proposed loan. It did not even start Phinney on his way to the plaintiff until it had received the plaintiff's note and policy. It was for the defendant to say what further receipt or voucher it would require. It was therefore within the apparent scope of Phinney's authority to demand that the plaintiff should sign some voucher. And this was found as a fact at the hearing. The single justice found, and on the testimony of the manager of the defendant's Boston agency

he was well warranted in finding, that Phinney "was also to attend to certain other matters in connection with the delivery of the check." This means, as the testimony clearly shows, that Phinney was expected to procure the plaintiff's receipt or acknowledgment and send it to the defendant.

The finding that this "was not within the apparent scope of his authority as an agent for soliciting insurance" does not help the defendant. It was not in the latter capacity that he either was or purported to be acting, or that he was authorized by the defendant to act in this matter.

It may be that the single justice could have found that the plaintiff· was guilty of such negligence as to bar him from recovery. But he manifestly was not bound so to find. And upon Barry's testimony as to the transaction and the circumstances under which he indorsed the check, thinking that he was signing a voucher, the finding is not shown to be wrong. We have held in many cases that one who has signed a release or other paper under a fraudulent misrepresentation as to its contents or effect may avoid his agreement therein contained when it·appears also that he was kept in ignorance of its contents by some fraudulent concealment or artifice. That was the case here. · *Curley* v. *Harris,* 11 Allen, 112. *Leddy* v. *Barney,* 139 Mass. 394. *O'Donnell* v. *Clinton,* 145 Mass. 461. *Rosenberg* v. *Doe,* 148 Mass. 560. *Freedley* v. *French,* 154 Mass. 339. *Bliss* v. *New York Central & Hudson River Railroad,* 160 Mass. 447. *McNamara* v. *Boston Elevated Railway,* 197 Mass. 383. *Price* v. *Rosenberg,* 200 Mass. 36. *Rollins* v. *Quimby,* 200 Mass. 162. *Larsson* v. *Metropolitan Stock Exchange,* 200 Mass. 367.

The final decree must be modified so as to include the costs of the appeal, and so modified must be affirmed.

*So ordered.*