MICHELE ROCCI *vs.* MASSACHUSETTS ACCIDENT COMPANY.

Suffolk.    November 10, 1915. — January 6, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Insurance,* Health. *Contract,* Construction. *Release. Tender. Practice, Civil,* New trial, Verdict. *Words,* "Termination of disability," "Continuously."

A policy of health insurance provided for the payment of a premium of $1 in each month, and contained a condition that "Failure to make any payment on or before the date the same is due shall terminate this policy." Under the head "Cancellation" was the provision, "This policy shall terminate and cease to be in force upon failure to pay a premium when due." In an action on the policy the plaintiff claimed indemnity for an illness of a year's duration. It appeared that all premiums on the policy were paid until two months after the plaintiff was taken sick but that none were paid after that. *Held,* that at the end of the first month after the last premium was paid the policy terminated and that there could be no liability for any sickness after that time, the fact that the sickness had begun before the first unpaid premium was due and had continued during the period of the non-payment of subsequent premiums being no excuse for such non-payment.

A policy of health insurance provided that "proof . . . of any sickness for which claim can be made, must be furnished to the company . . . within thirty days

from the date . . . of the termination of disability." *Held,* in an action on the policy in which these words were used, that the proof might be sufficient if made within thirty days from the termination of the disability suffered by the plaintiff from the sickness, although not made within thirty days from the termination of the period for which the plaintiff was entitled to indemnity.

In an action on a policy of health insurance the plaintiff based his claim upon a provision of the policy that the insured should receive "Fifty Dollars ($50.00) per month (for a period not exceeding twelve consecutive months), for the number of consecutive days, after the first four days, that the insured by reason of sickness is necessarily and continuously confined within the house, and is therein regularly visited by a legally qualified physician." The policy provided a different rate of benefit for a sickness which disabled the insured from all business or employment but did not confine him within the house. *Held,* that the defendant was entitled to have the jury instructed that the plaintiff, if entitled to recover, could recover only for the time that he was by reason of sickness necessarily and continuously confined within the house, that if he left the house to call upon counsel or for outdoor exercise or for some similar reason, even if advised by his physician to do so, or if by his physician's advice he went to a foreign country, he could not be said to have been necessarily and continuously confined within the house within the meaning of the policy.

The principle that obscure and equivocal words and phrases in a policy of insurance are to be construed against the insurer has no application where the meaning of the words is plain.

In an action on a policy of health insurance, where the defendant relied on two releases signed by the plaintiff on payment to him of a sum of money, and where the plaintiff contended that the payment to him was for the first month's instalment of a sick benefit to which he was entitled and that he was induced to sign the releases without reading them or knowing their contents by false representations of an agent of the defendant that they were merely receipts for the money, it was *held,* that on the evidence presented the jury properly might find that the plaintiff was induced by the statements of an agent of the defendant to believe that the instruments that he signed were merely receipts.

In the case stated above, it was *said,* that the question whether the evidence warranted the finding was a close one by reason of the fact that the plaintiff kept the draft for the money with the release attached to it for several days before cashing it, which afforded a strong argument that he had knowledge of the contents of the paper, but the court were of opinion that it could not be said as matter of law that a representation that the paper was a receipt when in truth it was a release under seal might not have been found to have been a material false representation.

In the same case it was *held* that the plaintiff, in order to avoid the releases signed by him, was not obliged to tender to the defendant the amount of money received by him when the releases were signed, because this might be found to have been a payment on account.

Where, in an action on a policy of health insurance, the jury in answer to a first question submitted to them by the presiding judge found, on evidence warranting such a finding, that the plaintiff was induced to sign certain releases by a false representation of an agent of the defendant that the instruments were mere receipts for money paid on account, and in answer to a second question found that during a certain period the plaintiff necessarily and continuously was confined within the house and therein was visited regularly by a legally

qualified physician, this court, in sustaining exceptions to the judge's refusal to give certain instructions on the second issue which he ought to have given, ordered that upon the new trial the answer to the first question should stand, because the first issue related to a separate and distinct matter in regard to the trial of which there had been no error.

CONTRACT on a policy of health and accident insurance, which originally was issued by the Protective Disability Insurance Company, and the performance of which was assumed by the Bay State Casualty Company and later by the defendant. Writ dated May 10, 1911.

A portion of the policy, which was made a part of the declaration, was as follows:

"(8) In the event of loss of time through sickness, complete, continuous and total, and such as shall probably disable and prevent the insured from the date of the beginning of the sickness from performing every duty pertaining to any business or occupation (and as herein and hereon provided), the Company will pay one of the following benefits, to wit: —

Benefit No. 6 (9) Sickness Indemnity: — At the rate of

"Fifty Dollars ($50.00) per month (for a period not exceeding twelve consecutive months), for the number of consecutive days, after the first four days, that the insured by reason of sickness is necessarily and continuously confined within the house, and is therein regularly visited by a legally qualified physician; or,

Benefit No. 7. (10) Non-Confining Sickness Indemnity: — If during convalescence immediately following confinement within the house, or by reason of a non-confining sickness, the insured shall be wholly and continuously disabled from performing every duty pertaining to any business or occupation, and is regularly attended by a legally qualified physician (during the time for which claim is made), the Company liability shall be two weeks at one-half of the sickness indemnity that would otherwise be allowed under (9) of this policy.

"Notice of regular payments stipulated hereon is hereby expressly waived. Failure to comply with all of the agreements, provisions and conditions of this policy shall invalidate all claims hereunder.

"This policy is issued to and accepted by the insured, subject to the following conditions:

.    .    .    .    .    .    .    .

"F. Failure to make any payment on or before the date when the same is due shall terminate this Policy. The treasurer may accept a payment after the date upon which said payment was due, but such acceptance shall not be deemed a waiver by the Company of any provision, condition, agreement, or limitation of this policy, and the Company shall not be liable for any injury occurring between the date of such expiration and twelve o'clock noon, Eastern Standard time, of the day following the acceptance of such renewal payment; nor for any sickness originating before the expiration of thirty days after the date of the acceptance of such renewal payment.

.   .   .   .   .   .   .   .

"J. Cancellation. — This policy shall terminate and cease to be in force upon failure to pay a premium when due, or in case the insured shall lose his or her hearing, or if he or she shall become insane, or his reason become impaired."

Other provisions of the policy are stated in the opinion.

The declaration among other paragraphs contained the following: "And the plaintiff says that on or about October 14, 1909 while the said contract of insurance was in full force and effect he came down with a sickness, complete, continuous and total, and that said sickness continued from said date in like manner for a period of more than twelve consecutive months, and during the said time he was regularly visited by a legally qualified physician; that by reason of said sickness the plaintiff was wholly disabled and prevented from the beginning and during the con-tinuance thereof, from performing every duty pertaining to any business or occupation as set forth in said Paragraph 8; and the plaintiff further says that said sickness and said loss of time were fully within the provisions of said Paragraph 8 and said Benefit 6; and all other provisions of said policy."

The answer, besides a general denial, alleged an accord and satisfaction, a release, the lapsing of the policy on December 1, 1909, for non-payment of premium, and that the proofs of disability required by the policy were not furnished until more than thirty days after the termination of the disability declared upon.

In the Superior Court the case was tried before *Bell,* J. The evidence for the plaintiff is described in the opinion. The defend-

ant introduced no evidence, and asked the judge to make the following rulings:

"1. Upon all the evidence in the case, the verdict should be for the defendant.

"2. There is not sufficient evidence to warrant a finding that the plaintiff is entitled to avoid the release.

"3. If the jury find that on or about November 4, 1909, the plaintiff signed the release in evidence, and also signed the release attached to the draft and that the draft with the release attached was left in the possession of the plaintiff who thereafter caused the same to be presented for payment, and the draft was paid, the plaintiff is presumed to accept the payment in accordance with the terms of the release.

"4. If the jury find that on or about November 4, 1909, the plaintiff received the draft with the release attached from the Bay State Casualty Company and signed the release, and that the draft and release were left in his possession, and that thereafter he caused the same to be collected, he cannot repudiate the settlement and maintain an action without first tendering back the sum received.

"5. That to entitle the plaintiff to recover, he must show by a fair preponderance of the evidence that he was by reason of sickness necessarily and continuously confined within the house, and also that he was therein regularly visited by a legally qualified physician, and that, if otherwise entitled to recover, it would only be for the time of such confinement and treatment.

"6. That the time for which the plaintiff was entitled to recover under the terms of the policy was for the number of consecutive days after the first four days and not exceeding twelve months, that the plaintiff by reason of sickness was necessarily and continuously confined within the house and therein regularly visited by a legally qualified physician, and that if the plaintiff was able to leave his house to call upon his counsel or for outdoor exercise or similar reason, even if advised so to do by his physician, he could not be said to be necessarily and continuously confined within the house within the meaning of the policy from the time he first left it for such purpose.

"7. That, if the jury find that the plaintiff went to Italy, even if advised to do so by his physician, as matter of law he

could not be said to be confined within the house and therein visited by a physician within the meaning of the policy from the time he started upon the trip.

"8. That by the terms of the policy affirmative proof is required to be furnished, in case of sickness, on blanks provided by the company within thirty days from the termination of disability, and that, if the jury find that blanks for such proof were furnished to the plaintiff and such proof was not furnished by the plaintiff to the company within thirty days after the termination of the time for which he claimed to be entitled to indemnity, he would not be entitled to recover against the company."

The judge refused to make any of these rulings, and submitted to the jury two special questions, which with the answers of the jury were as follows:

"1. Was or was not the plaintiff misled by any statement by the agent of the defendant as to the nature of the instruments which he signed on November 4, 1909, and thereby induced to believe that the instrument accompanying the draft was a receipt?" The jury answered, "He was."

"2. Until what date was the plaintiff necessarily and continuously confined within the house and therein regularly visited by a legally qualified physician?" The jury answered, "October 18, 1910."

The judge, being of opinion that the answers of the jury upon the two issues submitted to them determined all the material questions of fact, under St. 1913, c. 716, § 2, reported the case without a general verdict for such judgment as might be ordered by this court.

*W. A. Chandler,* for the plaintiff.

*W. C. Cogswell,* for the defendant.

RUGG, C. J. This is an action on a policy of health and accident insurance. There was evidence tending to show that the plaintiff was taken ill on October 9, 1909. A certificate of an attending physician states that on December 16, 1910, he still was unable to do any work.

It was a condition of the policy that "F. Failure to make any payment on or before the date when the same is due shall terminate this Policy. . . . J. Cancellation. — This policy shall terminate and cease to be in force upon failure to pay a premium when due."

The provision as to payments was, "Regular Payments. $1.00 Monthly Commencing December 1, 1906." Another provision was, "Notice of regular payments stipulated hereon is hereby expressly waived. Failure to comply with all of the agreements, provisions and conditions of this policy shall invalidate all claims hereunder." There was evidence that all premiums were paid up to December 1, 1909, and that none were paid after that date. This provision as to payments is valid and not unusual in contracts of this sort. *Dolan* v. *Court Good Samaritan,* 128 Mass. 437. When the payment due on January 1, 1910, was not made, then the policy became cancelled according to its own terms without any further act. It is a self executing provision. No claim can be made to benefits which otherwise might have accrued after the date of the avoidance of the policy in that way. *Kidder* v. *United Order of the Golden Cross,* 192 Mass. 326, 336. *O'Toole* v. *Jennings,* 219 Mass. 105. There is nothing in the terms of the policy or in the circumstances disclosed to warrant an inference that the definite and explicit words as to cancellation for non-payment of premiums are not to be given their ordinary signification. The fact that illness had begun before the payment was due does not excuse payment. There can be no successful contention that this condition was waived because of the illness. All liability after the first month has been contested by the insurer. There is no liability after January 1, 1910.

The jury found that the period for which the plaintiff was entitled to recover ended on October 18, 1910. The policy provided that "proof . . . of any sickness for which claim can be made, must be furnished to the Company . . . within thirty days from the date . . . of the termination of disability." Such proof was filed with the company on January 2, 1911. It is contended that this was not a compliance with the policy and that the plaintiff's claim thereby is forfeited. The policy provides for two different sick benefits, one, "Benefit No. 6," a "Sickness Indemnity" payable when the "insured by reason of sickness is necessarily and continuously confined within the house," and the other, "Benefit No. 7," "Non-Confining Sickness Indemnity," payable when "the insured shall be wholly and continuously disabled from performing every duty pertaining to any business or occupation." The equivalent of "disability" occurs in this clause and not in "Bene-

fit No. 6" under which the plaintiff's claim arises. While the policy is not very clear in this regard, it does not require the proof to be made within thirty days after the end of the period for which the sick benefit is claimed. Apparently there is no requirement as to the time of making proof applicable expressly to Benefit No. 6. But the time for proof as to both sick benefits is the same, namely: within thirty days after the "termination of disability." Looking to the policy for a definition of the meaning of these words, it is found in Benefit No. 7 as quoted above. While this sometimes may be inconvenient and prolong unduly the adjustment of claims, yet it seems to be the reasonable construction of the policy. It follows that it could not be ruled as matter of law that the proof must be furnished within thirty days after the termination of the time for which the plaintiff was entitled to indemnity. The defendant's eighth request for ruling was denied rightly.

The ground for recovery of "Benefit No. 6," which the plaintiff claims, is stated in the policy to be that "the insured by reason of sickness is necessarily and continuously confined within the house." This clause was embodied in its exact words in a request for instructions. The denial of this request was error. A policy of insurance is a written contract. Its terms are to be given a reasonable construction. Each party is entitled to have the contract interpreted according to the words used, and not stretched to include gratuities to one whose misfortune may excite sympathy. A stipulation that there can be no recovery, except for a period while the insured is continuously confined within the house, is a reasonable one. It is for the parties to decide whether they want that kind of insurance. Presumably, the rate charged was based on the unlikelihood of such sickness continuing for a long period as compared with a simple disability sickness. The contrast between a benefit payable for a sickness which confines the insured continuously within the house, and one which merely disables him from all business or employment, is distinctly made in the policy at bar and a different rate of benefit is payable for each kind of sickness. It is an elementary rule in the interpretation of contracts that whenever reasonably practicable every word shall be given effect. It must be presumed that words have been employed for the purpose of expressing the intent of the parties. The word "con-

tinuously" in its common and accepted significance means uninterruptedly, an unbroken sequence, without intermission or cessation, without intervening time. While it should not be given a constricted interpretation as applied to the subject matter, so as to exclude for example a transfer of a person seriously ill from his house to a hospital and back again or other imperative removals, it cannot be extended to include frequent changes from one house to another. Such a policy of insurance as that here in controversy means that its benefit is payable only to an insured suffering from such serious malady that he is not able to break his confinement to the house with journeys of any substantial character outside its confines. It is too plain for discussion that one cannot be "continuously confined within the house" and at the same time take a trip to Italy. "Within the house" naturally means one house in the absence of some exigency, especially when construed with the next clause, which requires that the insured be "therein regularly visited by a legally qualified physician." It is difficult to see how an insured who, as did the plaintiff, remained two weeks in his own house, then went in a carriage to his sister's house in Roxbury where he stayed two weeks, and thereafter was three weeks in the city hospital, three or four weeks in a different hospital, and then, after another period at home, went to Medford, a city several miles north of Boston, for two weeks, and thereafter was at still another hospital in the south of Boston, can be said with any due regard to the meaning of words to have been "continuously confined within the house, and . . . therein regularly visited" by a physician. The widest extension of which these words seem susceptible hardly can include such frequent interruptions of the continuity of confinement within the house. The contrast made by this policy between "Benefit No. 6" and "Benefit No. 7," the one for continuous confinement in the house and the other for business disability, cannot be ignored nor construed away. Doubtless, as to the meaning of obscure or equivocal words or phrases, the presumption is against the insurer, by whom the contract is drawn. *McAllister* v. *New England Mutual Life Ins. Co.* 101 Mass. 558, 561. *Ferguson* v. *Union Mutual Life Ins. Co.* 187 Mass. 8, 14. But that principle does not apply where the words are so plain that there is no room for construction. *Sawyer* v. *Masonic Protective Association,* 75

N. H. 276, explaining *Scales* v. *Masonic Protective Association,* 70 N. H. 490.   *Bishop* v. *United States Casualty Co.* 99 App. Div. (N. Y.) 530.   *Bruzas* v. *Peerless Casualty Co.* 111 Maine, 308. Considerable liberality of construction has been given to the words "confinement to the house," as used in health insurance contracts, although some decisions have gone rather far in applying these words.   See cases collected in Ann. Cas. 1915 A 260.   But those words are more favorable to the insured than those employed in the present policy.   The defendant's requests for instructions numbered 5, 6 and 7 should have been granted in substance.

The plaintiff signed two releases of all claims under the policy, one attached to a draft for $50 and the other a separate instrument. He testified that an agent of the defendant, after some discussion about settlement, said to him: "'Here is a draft; that is for money that you have got to have. . . . That is the receipt I must return to the company, but this receipt goes without the filling. . . . That is a draft for money that is coming to you, and sign up here. . . . That is the receipt that I must return to the company, that you received the money. . . . Sign here;'" and that the receipts were not read to him.   The plaintiff contended in substance that this was a payment of the first month's instalment of the sick benefit, and that he was induced by the false representations of the agent to sign the releases without reading them or knowing their contents.   The plaintiff kept the draft with the release attached several days, and then collected it.   That is a strong argument as to the fact of knowledge by the plaintiff. The case is close upon this point, but we incline to the opinion that it cannot quite be said as matter of law that a representation that a paper is a receipt, when in truth it is a release under seal, may not have been found to have been a material false representation.   *Freedley* v. *French,* 154 Mass. 339.   *McNamara* v. *Boston Elevated Railway,* 197 Mass. 383.   *Barry* v. *Mutual Life Ins. Co.* 211 Mass. 306, 310.

The plaintiff was not obliged to tender to the defendant the $50 paid him when the release was signed.   That might be treated as a payment on account.   *Bliss* v. *New York Central & Hudson River Railroad,* 160 Mass. 447.

The result is that the answer to the first question cannot be pronounced erroneous in law.   It is an issue quite separate and

distinct from the other, and it appears that the error which vitiates · the answer to the other question could not in reason have affected this one. Hence it may stand. *Simmons* v. *Fish,* 210 Mass. 563, 568. *Burke* v. *Hodge,* 211 Mass. 156, 164. *Norfolk Southern Railroad* v. *Ferebee,* 238 U. S. 269, 274.

But there was such error in the refusal to give appropriate requests for instructions, that the answer to the second question must be set aside and a new trial had.

*So ordered.*