MARGARET A. REARDON *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Middlesex.    November 4, 1941. — March 31, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Negligence*, Street railway: station. *Evidence*, Competency, Materiality,
Admissions.

A finding of negligence of a street railway company toward a woman
passenger who slipped on a wet, slippery spot on the floor of a passage-
way in the defendant's station was not warranted where there was no
evidence that such condition had existed so long before the fall that
the defendant's employees should have discovered and remedied it.

Evidence, merely that some time after a passenger's fall on a wet, slippery
spot in a street railway station sawdust was placed on the spot, and
that a rule of the railway company required employees to keep the
station clean and free of substances which might cause accidents,
would not warrant a finding of negligence of the company toward
such passenger.

There was no error in excluding a question which assumed a material
fact of which there was no evidence.

TORT. Writ in the Superior Court dated June 20, 1938.

The action was tried before *Donahue*, J.

*T. B. Shea*, for the plaintiff.

*C. S. Walkup, Jr.*, for the defendant.

DONAHUE, J. The plaintiff, who had been a passenger
in a subway train of the defendant, left it at a subway
station, and, while walking along a passageway which pro-
vided access to the street, slipped and fell, receiving injury.
At the close of the evidence introduced by the plaintiff,
the judge in the Superior Court directed a verdict for the
defendant.

The testimony of the plaintiff is here summarized. There
was on the floor of the passageway, at the place where she
fell, an area about four inches wide and about twenty-one
inches long which was slippery, slimy, and wet. Two men
helped her up and "sat her" on stairs which led to the
street. She then knew that the place where she fell was

wet and slippery but she did not see water there until later. She sat on the steps for five or ten minutes and then made her way up the stairs to a "bus stop" on the street. At the suggestion of an employee of the defendant she went back down the stairs and along the passageway where she had fallen, to report the accident to the station master. She then noticed that sawdust had been put at the place where she fell and at the foot of the stairs and at other places in the passageway. Its "color was fresh, as though it had been put on a little while." She was asked "what else she noticed about the wet place" and "replied that she noticed that it was from water dropping about. The water would drop to that particular spot. The walls were all wet. She looked up and saw the water dropping from that particular spot, and she saw it was broken. There was water on the walls dropping from the walls on both sides." She was "asked about any color" and replied, "dark stains, from dark stains along the wall."

It could not have been ruled as matter of law that the plaintiff was not in the exercise of due care. The evidence did not warrant a finding that there was any defect in the construction of the floor of the passageway, or that the floor was so built as to be peculiarly liable to become wet. And there was nothing in the record to indicate that it was, or lately had been, raining, or that the streets were wet, or that the condition of the floor where the plaintiff fell was due in whole or in part to the use of the passageway by other passengers under such weather conditions. Compare *Moors* v. *Boston Elevated Railway*, 305 Mass. 81. There was, however, testimony of the plaintiff to the effect that on the day of her injury, some time after her fall, she saw water coming from the walls and the ceiling of the passageway to the place where she had fallen and to other places on the floor.

It was the duty of the defendant as a common carrier to exercise care, consistent with the conduct of its business, to keep the passageway in a reasonably safe condition for use by the plaintiff and other passengers who were rightfully there. *Connolly* v. *Boston Elevated Railway*, 309 Mass. 177,

179. We are here primarily concerned with the condition of the floor of the passageway at the time and place of the plaintiff's fall. She saw no water in the passageway at that time. What she then saw was an area on the floor of approximately four by twenty-one inches which was slippery, slimy and wet. There is nothing to indicate with any definiteness the length of time that the condition on the floor thus described by the plaintiff had existed there prior to her fall. A finding was not warranted that the condition described by her had been there long enough so that employees of the defendant in the exercise of due care should have discovered and remedied it. *Labrie* v. *Donham,* 243 Mass. 584. *O'Neill* v. *Boston Elevated Railway,* 248 Mass. 362. *Bornstein* v. *R. H. White Co.* 259 Mass. 34. *Sisson* v. *Boston Elevated Railway,* 277 Mass. 431. *Renzi* v. *Boston Elevated Railway,* 293 Mass. 228. Compare *Solomon* v. *Boston Elevated Railway,* 276 Mass. 139.

The plaintiff further testified as to other quite different conditions in the passageway which were observed by her at a later time, that is, after she had sat for a while on the stairs, had gone to the street and had returned again to the passageway. While she saw no water there at the time of her fall there was evidently a considerable quantity of water present when she returned. She testified that water was then running down the walls and running from a "broken" place in the ceiling, and there were stains on the wall. An inference was warranted that, between the time of her fall and the time when she returned to the passageway, a quantity of water, the initial source of which did not appear, had entered through the ceiling and the walls of the passageway. The record contains no description of the size, appearance or character of the break in the ceiling of the passageway, or of the size or of the appearance of the stains referred to, except that they were dark and were "along the wall." We are here concerned with the condition of the passageway at the time and place of the plaintiff's fall. Even if we should assume, although this does not appear, that there was, at that time, a break in the ceiling and stains on the wall, we think that there is

nothing to show that those conditions had existed long enough, or were of such a character, that the defendant's employees were negligent in not discovering and remedying them.

A rule of the defendant required its employees to keep the station in clean, suitable condition and to see to it that no foreign substance that might cause accidents be allowed to remain on platforms and stairs. Sawdust was kept in the station to be used to dry up wet places which might appear on stairs or floors in the station. On the day in question sawdust was put upon the floor of the passageway, but this was after the plaintiff's fall and before she returned to the passageway from the street. Evidence of "precautions to prevent future accidents was not evidence of the defendant's responsibility for the accident which had occurred." *Knowles* v. *Great Atlantic & Pacific Tea Co.* 287 Mass. 400, 403, and cases cited.

The plaintiff called as a witness a man employed by the defendant as a porter at the station when the plaintiff was injured. He was asked by the plaintiff's attorney: "How long before, how many years would you say, that water used to come through?" On objection by the defendant the question was excluded and the plaintiff's attorney made offer of proof that the answer of the witness would be: "a number of years before the accident happened." The record does not state that an exception was taken by the plaintiff. Furthermore, there was no evidence that the witness, or anyone else, had ever seen "water . . . come through" the walls or ceiling of the passageway prior to the time of the plaintiff's fall. The question assumed a material fact of which there was no evidence. *White* v. *Boston*, 186 Mass. 65, 67. *Price* v. *Rosenberg*, 200 Mass. 36, 45.

*Exceptions overruled.*