# WASHINGTON RAILWAY & ELECTRIC COMPANY *v.* McLEAN.

### RELEASE; FRAUD; INTENT.

1. Failure of a woman seventy-five years of age, unversed in business matters, to read, before signing, a general release of liability for personal injuries, relying upon the statements of an agent of the other party that it was a receipt for money paid her for injury to her apparel, will not, as a matter of law, be held to preclude her from maintaining an action for the personal injuries. (Citing *Baltimore & O. R. Co.* v. *Morgan,* 35 App. D. C. 195.)

2. In order to avoid the effect of a release of liability for personal injuries upon the ground that the plaintiff was induced to believe that she was signing merely a receipt for money paid her for injuries to her apparel, an actual intent to defraud or intentional misrepresentation need not be shown, it being sufficient if it appears that the statements or conduct of the other party were reasonably calcu-

lated to mislead the plaintiff as to the true nature of the paper, and induce her to sign the same without reading it or having it read to her, and that she was misled thereby.

No. 2497. Submitted May 8, 1913. Decided May 26, 1913.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action brought to recover damages for personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment for the plaintiff, Sarah K. McLean, appellee here, in the supreme court of the District in an action against the defendant, The Washington Railway & Electric Company, appellant here, for damages for personal injuries sustained by the plaintiff in being thrown from one of defendant's cars, by its being prematurely started as she was in the act of alighting therefrom.

The defendant admits its negligence, its principal complaint here being that a verdict should have been directed in its favor because of an alleged release which the defendant signed under circumstances hereinafter set forth.

The plaintiff was seventy-five years old at the time of her injury, which occurred on the afternoon of Saturday, December 16, 1911. Her testimony tended to show that she was not immediately sensible of injury and did not notify the defendant of her fall; that during the forenoon of Monday, following the accident, the agent of the defendant called to see her and inquired whether she was injured, to which she replied: "No; I can't say that I have been injured. I feel a good deal shaken up, but I can't say that I have been injured. The only injury that I have sustained, as I can see so far, is the injury to my clothing. Fortunately, I was not wearing my best gown;" that the agent said he was very glad to hear this, and asked her if she would consider $10 as payment for her clothing, to which she replied: "Well, of course, I didn't have on

my best dress, but I thought $15 would have been enough; my dress and veil were injured;" that she produced the dress and showed him how it had been injured; that he handed her three five dollar bills and produced a paper, "and as he stood there he folded it this way (indicating), and he handed it to me," and said, "I want you to put your name there for me, to show the company that I have paid you this money;" that the only thing she saw was where she signed her name; that the paper was "all wrapped up;" that it was not read to her; that "there was not a thing on it to see, except where she receipted it; that he said it was simply a receipt; so that the railroad would know that she had receipted for her clothing;" that she made no claim of any kind for any personal injury because she did not then know she had been injured, and the agent did not offer to pay her anything for such an injury, nor did he suggest that the money received by her covered personal injuries.   On cross-examination she was asked if the agent refused to let her read the paper, and replied:  "Why should I ask him to let me read it?  I did not know there was anything on it—I thought it was just what he wanted—my name;" that she could not say the agent did not take his hand off the paper, although her impression was that he did not; that he stood right by her when she signed it and took it right away; that he said: "Just sign this right here now, right now, then I will take it with me."

The testimony of the agent tended to show that the plaintiff, when he called to see her, informed him that she had "hurt her hip slightly; did not think it anything serious, but was severely shaken up, and got her bonnet and veil soiled;" that he then informed her that the company should do something for her and asked her if she thought $10 would be satisfactory; that she then inquired if he could not make it $15; that, after a moment's hesitation, he said he would, and thereupon took out a blank release, filled it in, and "then placed the release before her, wide open;" that he told her it was a release, releasing the company from any further responsibility.  He was not sure "whether he exactly handed it to her, but he placed it be-

fore her." On cross-examination he testified that he thought *"it was her veil and her bonnet that she said was injured."*

In rebuttal, the plaintiff characterized the testimony of the agent as to his filling in the release in her presence as untrue.

*Mr. J. J. Darlington* and *Mr. W. C. Sullivan,* for the appellant:

1. There was no evidence from which the jury could find: (a) That the claim agent stated that the release was merely a receipt; (b) that his alleged statements or conduct could have deceived or misled her; or (c) that she relied upon any statement or conduct of the claim agent. *Runkle* v. *Burnham,* 150 U. S. 216, 225; *United States* v. *Teschmaker,* 22 How. 392, 405; *United States* v. *Carter,* 217 U. S. 286, 316–17; *Ming* v. *Woolfolk,* 116 U. S. 599, 603; *Elliott Mach. Co.* v. *United States,* 43 Ct. Cl. 469, 478; *Holton* v. *Davis,* 108 Fed. 138, 150–1.

2. (d) The appellee was not entitled to rely upon the alleged statements or conduct of the claim agent; (e) no duty was imposed upon him to read the release to her; and (f) signing the release without reading it was not a reasonable act upon the part of the appellee, and bars recovery by her. *Magee* v. *Insurance Co.* 92 U. S. 93, 98–9; *Cleaveland* v. *Richardson,* 132 U. S. 318, 329; *Insurance Co.* v. *Reed,* 33 Ohio St. 283, 391; *Railroad Co.* v. *Morgan,* 35 App. D. C. 195, 202; *Andrus* v. *Smelting Co.* 130 U. S. 643, 647; *Heck* v. *R. Co.* 147 Fed. 775; *R. Co.* v. *Diffendaffer,* 125 Fed. 893; *Upton* v. *Tribilcock,* 91 U. S. 45, 50; *Hazard* v. *Griswold,* 21 Fed. 178, 180; *Taylor* v. *Fleckenstein,* 30 Fed. 99, 102; *Rounsaville* v. *Scale Co.* 127 Ga. 735; *Whitney* v. *Davidge,* 23 App. D. C. 156, 164–5; *Scale Co.* v. *Garrison,* 28 App. D. C. 243, 249; *R. Co.* v. *Belliwith,* 83 Fed. 437, 439; *Green* v. *R. Co.* 92 Fed. 873, 876; *R. Co.* v. *Green,* 114 Fed. 679, 680; *Wallace* v. *R. Co.* 67 Iowa, 547; *Bacon* v. *Markley,* 46 Ind. 116; *Clodfelder* v. *Hulett,* 72 Ind. 137, 143; *Guano*

*Co.* v. *Copelan,* 112 Ga. 319; *Fivey* v. *R. Co.* 67 N. J. L. 627, 633–4.

3. The court erred in overruling appellant's objection to appellee's third prayer, that, in order to avoid her release, it was essential for her to establish, by clear and convincing proof, the fraudulent intent of and misrepresentation by the appellant, her own reliance thereupon, that she did rely thereon, and that she was injured by so doing. *Lalone* v. *United States,* 164 U. S. 255, 257; *United States* v. *Clark,* 200 U. S. 601, 607, 608; *Maxwell Land-Grant Case,* 121 U. S. 325; *United States* v. *Stinson,* 197 U. S. 200, 204; *Bank* v. *Lyons,* 137 Fed. 976, 977; *Thorwegan* v. *King,* 111 U. S. 545, 555; *R. Co.* v. *Belliwith,* 83 Fed. 437, 439–43; *R. Co.* v. *Diffendaffer,* 125 Fed. 893, 895; *Barker* v. *R. Co.* 65 Fed. 460; *Fivey* v. *R. Co.* 67 N. J. L. 627, 633–4; *Liberty* v. *Haynes,* 103 Me. 182, 190; *Parlin* v. *Small,* 68 Me. 289; *R. Co.* v. *Shay,* 82 Pa. 198; *Pederson* v. *R. Co.* 33 Pac. 351, 353 (Wash.); *DeDouglas* v. *Traction Co.* 198 Pa. 430; *Ogden* v. *Traction Co.* 202 Pa. 480, 485, 487; *Connor* v. *Pushor,* 86 Me. 300; *Insurance Co.* v. *Rammelsberg,* 58 Kan. 531; *Rose* v. *R. Co.* — Pa. —, 12 Atl. 78; *Wenston, etc. Co.* v. *Purnell,* 75 Md. 113; *Klauber* v. *Wright,* 52 Wis. 313; *Stroul* v. *Lewis,* 104 Me. 65; *Cummins* v. *Hurlburt,* 92 Pa. 165; *Atlantic Delaine Co.* v. *James,* 94 U. S. 207, 214; *Maxwell Land Grant Case,* 121 U. S. 325, 380; *R. Co.* v. *Dull,* 124 U. S. 173, 183; *United States* v. *Budd,* 144 U. S. 154, 161; *United States* v. *Teleph. Co.* 167 U. S. 224, 240–1; *Farnsworth* v. *Duffries,* 142 U. S. 43, 47; *Jackson* v. *King,* 4 Cow. 207, 220; *Butler* v. *Haskell,* 4 Desauss. Eq. 684,

4. The court erred in instructing the jury that it was not essential for the appellee to establish an intent to defraud her on the part of the claim agent, in order to avoid her release. *Hall* v. *Perkins,* 3 Wend. 631; *Conrad* v. *Nicoll,* 4 Pet. 291, 295–6; *United States* v. *Arrendondo,* 6 Pet. 691, 716–17; *Eyre* v. *Potter,* 15 How. 42, 56; *Brooks* v. *O'Hara Bros.* 2 McCrary, 644, 649; *Bartol* v. *Walton & W. Co.* 92 Fed. 13, 14; *Judd* v. *Wener,* 55 Conn. 277; *Terrell* v. *Bennett,* 18 Ga. 406; *Linington* v. *Strong,* 111 Ill. 160; *Schwabher* v. *Riddle,*

90 Ill. 348; *Miller* v. *Howell,* 2 Ill. 499; *Warfield* v. *Clark,*
118 Iowa, 75; *Warren* v. *Banker,* 2 Duv. (Ky.) 155; *Hum-
phrey* v. *Merriam,* 32 Minn. 197; *Summers* v. *Insurance Co.*
90 Mo. App. 700; *Lord* v. *Colly,* 6 N. H. 99; *Wright* v. *Brew-
ing Co.* 103 Md. 380; *Feeney* v. *Howard,* 79 Cal. 528; *Cowley*
v. *Smith,* 46 N. J. 383; *Kountz* v. *Kennedy,* 147 N. Y. 129;
*MacCullar* v. *McKinley,* 99 N. Y. 358; *MacAleer* v. *Murray,*
68 Pa. 136; *Bokee* v. *Walker,* 14 Pa. 139; *Wachsmuth* v. *Mar-
tini,* 45 Ill. App. 244.


*Mr. A. S. Worthington* and *Mr. J. Wilmer Latimer,* for the
appellee:

1. Whether appellee was entitled to rely upon statements
and conduct of claim agent; whether a duty was imposed upon
him to acquaint her of contents of paper; and whether it was
reasonable for her to sign paper without reading it,—were ques-
tions for the jury. *Baltimore & O. R. R. Co.* v. *Morgan,* 35
App. D. C. 195; *Bliss* v. *New York C. & H. R. R. Co.* 160
Mass. 147; *Chicago, R. I. & P. R. Co.* v. *Lewis,* 109 Ill. 120;
*Chicago, R. I. & P. R. Co.* v. *Lewis,* 13 Ill. App. 166; *Chesa-
peake & O. R. Co.* v. *Howard,* 14 App. D. C. 262; *Chesapeake
& O. R. Co.* v. *Howard,* 178 U. S. 153; *Freedley* v. *French,* 154
Mass. 339; *Illinois Central R. R. Co.* v. *Welch,* 52 Ill. 183;
*Lusted* v. *Northwestern R. Co.* 71 Wis. 391; *Larsson* v. *Met.
Stock Exchange,* 200 Mass. 367; *Rockwell* v. *Capital Traction
Co.* 25 App. D. C. 98; *St. Louis, etc. R. Co.* v. *Smith,* 100 S.
W. (Ark.), 884; *Union P. R. Co.* v. *Harris,* 158 U. S. 326.

2. The instruction upon the claim agent's motive or intent
was properly given. 34 Cyc. 1063; *Lusted* v. *Chicago & N. W.
R. Co.* 71 Wis. 391; *Bussian* v. *Milwaukee, L. S. & W. R. Co.*
56 Wis. 325; *Kirchner* v. *New Hampshire, S. M. Co.* 135 N.
Y. 182; *People's Nat. Gas Co.* v. *Millbury,* 2 Monag. (Pa.),
145; *Rauen* v. *Prudential Ins. Co.* 106 N. W. (Iowa), 198;
*Houston & T. C. R. Co.* v. *Brown,* 69 S. W. (Tex.), 651;
*O'Donnell* v. *Clinton,* 145 Mass. 461.

Mr. Justice ROBB delivered the opinion of the Court:

As the testimony raised a sharp issue of fact, it was clearly for the jury to say whether the minds of the parties ever met, and whether the conduct of the defendant's agent was calculated to mislead the plaintiff to her injury. If the jury accepted the testimony of the plaintiff, and they evidently did, it was expressly understood that the money which was paid her by the defendant's agent was for injury to her clothing, and for nothing else. It was further understood that the paper which she signed "was simply a receipt, so that the railroad would know that she had receipted for her clothing,—for injury to her clothing." It is clear, therefore, that there was ample evidence upon which to base a finding that nothing was paid the plaintiff on account of physical injuries. Of course, it would have been competent for her to have executed a release for such damages in consideration of the payment of damages to her clothing, but the circumstances surrounding the transaction were such that it was for the jury to say whether it was an act of negligence on her part to rely upon the statement of the agent, and sign the paper without examination. *Baltimore & O. R. Co.* v. *Morgan,* 35 App. D. C. 195; *Union P. R. Co.* v. *Harris,* 158 U. S. 326, 39 L. ed. 1003, 15 Sup. Ct. Rep. 843; *Lusted* v. *Chicago & N. W. R. Co.* 71 Wis. 391, 36 N. W. 857; *Larsson* v. *Metropolitan Stock Exch.* 200 Mass. 367, 86 N. E. 940. It would be unconscionable for a court of justice to rule, as matter of law, that it constituted negligence for a lady seventy-five years of age, unversed in business matters, to sign a paper, under the circumstances detailed by the plaintiff, without reading it. If she is to be charged with negligence as matter of law, who is to receive the benefit? In other words, is the company to be thus favored, through whose agent the plaintiff was led or induced to sign a general release when she in fact supposed, and we think the jury were justified in finding that she had reason to suppose, that she was signing a mere receipt for money paid her for a specific purpose?

It is further assigned as error that the court, at the request

of the plaintiff, instructed the jury that actual intent to defraud or intentional misrepresentation on the part of the agent of the company in procuring plaintiff's signature to said alleged release were unnecessary in order to avoid the effect of such release, if it appeared "that the statements or conduct of said agent were reasonably calculated to mislead the plaintiff as to the true nature of the paper, and induce her to sign the same without reading it or having it read to her, and that she was misled thereby and signed the same relying upon such statements or conduct on the part of the agent." It is well settled that the fraud of the defendant in such cases may be purely passive. If the plaintiff, without negligence, is misled to his injury by the acts and representations of the defendant, the mischief is none the less because such acts and representations did not spring from a corrupt motive. For "if there was a misunderstanding of the facts, whether the facts were wilfully misstated by the agent of the railway company or not is not a very material question; but the question is whether the facts were understood by both parties." *Union P. R. Co.* v. *Harris,* 158 U. S. 326, 332, 39 L. ed. 1003, 1005, 15 Sup. Ct. Rep. 843; In *Lusted* v. *Chicago & N. W. R. Co.* 71 Wis. 391, 36 N. W. 857, which was cited with approval by the Supreme Court in the *Harris Case,* the court said: "The further question then arises, Was the ignorance of the plaintiff of the clause contained in the instrument, releasing all claim of personal injury, the result of such negligence on his part as precludes him from avoiding it? As to that point we are constrained to say, without imputing to the agent who obtained the release any conscious bad faith in the transaction, that he obtained it at such a time and under such circumstances as to show that he acquired an undue advantage, akin in law to a species of fraud." See also: *Kirchner* v. *New Home Sewing Mach. Co.* 135 N. Y. 182, 31 N. E. 1104; *Rauen* v. *Prudential Ins. Co.* 129 Iowa, 725, 106 N. W. 198; *O'Donnell* v. *Clinton,* 145 Mass. 461, 14 N. E. 747.

Judgment affirmed, with costs.                    *Affirmed.*