Argued September 19, affirmed November 13, 1928.

W. L. WOOD v. JOHN E. YOUNG.

(271 Pac. 734.)

For appellant there was a brief over the name of *Messrs. Wilbur, Beckett, Howell & Oppenheimer,* with an oral argument by *Mr. Eugene Oppenheimer.*

For respondent there was a brief over the name of *Messrs. Davis & Harris,* with an oral argument by *Mr. Paul R. Harris.*

BROWN, J.—Black's Law Dictionary thus defines the term "release":

"The relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists or to whom it accrues, to the person against whom it might have been demanded or enforced."

Anderson's Dictionary of Law says:

"Release. The act or writing by which some claim or interest is surrendered to another person."

The plaintiff says that, a few days after the collision a draft was delivered to him for his minor son, LeRoy Wood, the amount represented thereby constituting full consideration and settlement of the son's claim for damages against defendant for the total destruction of his automobile. The draft reads:

"$615.00. Albany, Ore., Oct 4, 19—5.

"At sight pay to the order of W. L. Wood and LeRoy Wood Six Hundred Fifteen and no/100 Dollars, in settlement of claim of damages against John Young.

"RONALD L. REILLY.

"To Oregon Surety & Casualty Company,
  "Board of Trade Building,
    "Portland, Oregon."

Across the end of the draft appears the following matter:

"This draft will not be paid unless receipt on reverse side is properly executed."

On the back of the draft appears the following release, which the defendant invokes as a full discharge of all claims against him:

"RELEASE.

"Received of John Young this 4th day of October, 1925, the sum of Six Hundred Fifteen and no/100

Dollars in full satisfaction, liquidation and discharge of all claims against the said John Young on account of the happening herein set forth, to wit, collision with our automobile, whether now or hereafter to become manifest, arising directly or indirectly from said happening which occurred on or about the 1st day of October, 1925.

"(Signature)    LeRoy Wood.    (Seal)
"W. L. Wood.

"Witness:
"J. V. Shank."

The chief ground upon which the validity of the judgment is questioned is the failure of the court, upon defendant's motion, to direct a verdict for him. This necessitates a thorough analysis of the evidence adduced by plaintiff.

■ According to the record, on October 1, 1925, LeRoy Wood, accompanied by his father, plaintiff herein, was operating an automobile in a southerly direction on the Pacific Highway between Portland and Albany. When he reached a point about three miles south of Aurora, he saw the defendant's car coming from the south at a high rate of speed, and crisscrossing from one side of the highway to the other. Becoming alarmed, he pulled his car off the pavement on the right and stopped. Defendant's car approached without decreasing its speed, and, still swerving in its course, struck the car in which plaintiff was riding midway of its body, demolishing it, throwing plaintiff out of the car, and hurling him a distance of 20 feet. When plaintiff regained consciousness, the defendant gave him his business card and requested him to call upon him at his office in Portland. Two or three days later plaintiff and his son, LeRoy, called upon the defendant, who took them to the office of an insurance company, whose

representatives in turn took them to the offices of
their attorney. Up to that time no claim for per-
sonal injuries had been mentioned; the only claim,
according to plaintiff and his witnesses, being with
relation to the damaged automobile. At the attor-
ney's office plaintiff was advised that the car would
be examined and an adjustment made thereon, and
he was requested to call the office from Albany at
5 p. m. on the following day. Plaintiff testified:

"I went there to call them up. I handed this num-
ber in to Central, and this man that wrote out the
check tapped me on the shoulder, and he said he had
come to settle for the car and I needn't call up. He
asked me what the price was. I told them to get a
small car of some kind. I told them a small car like
an Overland, like the boy had. * * I asked him what
his proposition was. He was willing to buy some
cheap car. I told him he couldn't settle with me that
way; that we would have to have a car just like the
boy had, he was at work, and if he had one that would
suit the boy, we would let him off; either to get a
car to suit the boy, or leave the price for a new car.
He didn't say a word. He turned around and wrote
out the check. He handed it to me. I didn't read
it, only noticed it covered the price of a car, and I
handed it to the car man and said, 'Does that suit
you?' He said, 'Yes.' Then Reilly stepped out, and
I said my son would be up soon and for him to look
over the cars, and for 'you to keep it.' * *

"Q. Then he kept this draft? A. The garageman,
Mr. Shank. * * I said, 'I suppose this covers the
price of the car.' He (Reilly) said, 'Yes.' So I
read it and found out it covered the price for the
garageman, but Reilly told me he didn't have any
right to settle up my affairs at all; just for the car.

"Q. He had no business with your trouble? A. No,
just for the car, is all. * * I said to him, 'This here
covers the car, I suppose.' When I read it he said,
'Yes, it does.' * *

"Q. Now, Mr. Wood, you relied on their statements to you when they turned that over to you? A. Yes, sir."

The plaintiff then testified that the car that had been demolished was the property of his minor son; that he had signed the contract with his son in the purchase of the car, and that "I just signed it (the release) for security, the same as I did the contract." He again testified that throughout the transaction the adjuster was representing the defendant and the insurance company, and, as such representative, informed him that the draft was delivered in payment for the automobile only. He testified that the adjuster "told me he didn't have any right to settle up my affairs at all; just for the car"; and that plaintiff relied upon this statement.

Plaintiff's son, LeRoy Wood, the owner of the car, testified that, in their conversation with the representatives of the insurance company in Portland, nothing was said about the personal injuries sustained by his father or himself, and that the only subject referred to was payment for the car. This testimony is corroborated by that of Lester Wood, brother of LeRoy.

■ From 24 Am. & Eng. Ency. of Law (2 ed.), page 308, we take the following pertinent observation with relation to release of claim for personal injuries:

"Where one receives injuries in a railroad or other accident, it is a general practice to procure from the injured person a release of damages, often while he is suffering from the effects of the accident, and usually upon payment of a small sum of money. * *

"Where the releasor signs a paper under the impression induced by the releasee that he is signing merely a receipt for money already paid, or a release of a part of his claim only, and the effect of the in-

strument as a general release is misstated and misrepresented, and the releasor is guilty of no negligence in accepting such statement, the release is of no effect. In other words, if the instrument signed is not what the releasor supposed he was signing, mental assent necessary to constitute a binding contract is absent.''

As to what constitutes a valid release, we take the following from 23 R. C. L., page 386:

''To be valid and binding, a release must be executed with full knowledge on the part of the releasor of what he is signing, and with an intention to discharge from liability.''

A valuable case on this question is *Rocci* v. *Massachusetts Accident Co.*, 222 Mass. 336 (110 N. E. 972, Ann. Cas. 1918C, 529). In rendering its opinion in that case, the Massachusetts court wrote:

''The plaintiff signed two releases of all claims under the policy, one attached to a draft for $50, and the other a separate instrument. He testified that an agent of the defendant, after some discussion about settlement, said to him: 'Here is a draft; that is for money that you have got to have. * * That is the receipt I must return to the company, but this receipt goes without the filling. * * That is a draft for money that is coming to you, and sign up here. * * That is the receipt that I must return to the company, that you received the money. * * Sign here.' * * The plaintiff kept the draft with the release attached several days, and then collected it. That is a strong argument as to the fact of knowledge by the plaintiff. The case is close upon this point, but we incline to the opinion that it cannot quite be said as matter of law that a representation that a paper is a receipt, when in truth it is a release under seal, may not have been found to have been a material false representation: *Freedley* v. *French*, 154 Mass. 339 (28 N. E. 272); *McNamara* v. *Boston*

*Elevated Ry.,* 197 Mass. 383 (83 N. E. 878); *Barry* v. *Mutual Life Ins. Co.,* 211 Mass. 306, 310 (97 N. E. 779).''

Another interesting case, and one squarely in point with the facts in the case at bar, is *Connors* v. *Richards,* 230 Mass. 436 (119 N. E. 831). In that case the plaintiff was injured by ice falling from the roof of defendant's building. According to the plaintiff's testimony, an offer of settlement was made for $2 ''for the damage done her muff'' by the falling ice, but after further talk $5 was paid. Before paying this amount, however, a release was drawn up by a clerk in the office, who presented it to the plaintiff for her signature, saying this was a ''receipt for $5 for damage to her muff.'' The plaintiff, relying upon this representation, signed the release. The opinion of the court says:

''It is not in evidence that at this time any claim was made for damages on account of personal injury; and the conversation concerned the personal property damage only. These facts bring the case within the rule stated in *Bliss* v. *New York Central & Hudson River Railroad,* 160 Mass. 447, 454 (36 N. E. 65, 39 Am. St. Rep. 504). It was for the jury to say whether the plaintiff signed the writing relying on the misrepresentation that it was a receipt merely for the damage to her property, and if they so found they could find that she was not deprived of her right to recover for injuries to her person: *Freedley* v. *French,* 154 Mass. 339 (28 N. E. 272); *Larsson* v. *Metropolitan Stock Exch.,* 200 Mass. 367 (86 N. E. 940). From all the evidence disclosed by the record, the representations as to the contents of the release were binding upon the defendant.''

There are many cases in the books that illustrate the validity or lack of validity of releases obtained in personal injury cases. But it is not necessary to

go abroad for illustration or example. In the case of *Nielsen* v. *Portland Gas & Coke Co.*, 76 Or. 505 (147 Pac. 554), that question was at issue, and in its discussion of the case this court said:

"An agreement of settlement and release obtained from an injured person who acts without independent counsel or advice should be scrutinized with great care, and, upon proof of any fact or facts fairly tending to show fraud or unconscionable advantage in obtaining it, a jury would be warranted in finding such settlement to be of no effect. *Olston* v. *Oregon W. P. & Ry. Co.*, 52 Or. 343 (96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915); *Foster* v. *University Lbr. Co.*, 65 Or. 46 (131 Pac. 736); *Woods* v. *Wikstrom*, 67 Or. 581 (135 Pac. 192)."

In the case at bar, the defendant contends that the release in the amount of $615 covers all damages on account of the demolished automobile, and for personal injuries sustained by LeRoy Wood and his father, W. L. Wood. After hearing the testimony, however, the jury brought in a verdict for plaintiff in the amount of $5,000 the full amount demanded. Measured by the damage actually sustained by plaintiff as found by the jury, the consideration for the settlement as specified in the release was clearly inadequate.

■ It has been held many times that inadequacy of consideration is not in and of itself sufficient ground for avoiding a release by competent parties, but it is a circumstance that is entitled to weight in considering and determining the intention of the parties to the release, as to whether the releasor understood that he was releasing all claim of damages for a serious hurt to his person: Note, L. R. A. 1916B, 780; 3 R. C. L. 397. To the same effect is 34 Cyc. 1063, par. f.

■ Referring to the question of jurisdiction of this court in a law action to annul a release obtained through fraud, we note the following from 23 R. C. L., page 415, Section 45, Release:

"It is proper in a suit at law for the plaintiff to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud is in the execution, or in misrepresentation as to material facts inducing execution. This avoids circuity of action and thus facilitates the administration of justice."

See, also, 3 Elliott on Contracts, § 2067; 1 Page on the Law of Contracts, § 344. For a list of cases making a distinction in the procedure to avoid an instrument executed through misrepresentation and an instrument void for fraud in its execution, see 3 Elliott on Contracts, p. 258, note 2; 6 Commentaries on the Law of Negligence, Thompson (2 ed.), § 7373.

A leading case upholding the right, in an action at law, to attack a release for fraud, is the case of *Olston* v. *Oregon W. P. & Ry. Co.*, 52 Or. 343 (96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915, and note).

In *Woods* v. *Wikstrom*, 67 Or. 581 (135 Pac. 192), the plaintiff was injured while in the employ of defendant. The defendant and his son, in an effort to effect a settlement, represented to plaintiff that he would soon recover from his injuries; that the injury was the result of an unavoidable accident, and that plaintiff had no cause of action on account of the injury. Plaintiff, relying upon these representations, in consideration of $30 and a promise that he would be kept in defendant's employment, executed his release. Thereafter, on discovering that he was seriously hurt, he brought action for his injuries and recovered judgment for $5,000. On appeal, the defendant as-

serted that the court erred in refusing to grant a nonsuit on the ground of the insufficiency of the evidence to take the case to the jury. In its disposition of the case this court held that the representations made by defendant to plaintiff in procuring the release, if false, constituted fraud, and would therefore vitiate the release, and that there was no error in submitting the question of fraud to the jury.

■ ■ Were we to determine this cause from the whole of the evidence, our verdict might be in contrariety to that returned by the jury. But we are not to try the case *de novo*. The law says that the jury are the sole judges of the credibility of the witnesses, and of the effect and value to be attached to the testimony of each and all of them. Furthermore, in view of the evidence adduced, this court is not authorized to reexamine the facts, for the reason that we cannot "affirmatively say there is no evidence to support the verdict." Or. Const., Art. VII, § 3-c. A verdict should be directed only when there is no relevant evidence before the jury, either strong or weak, tending to establish the contention of the party against whom a directed verdict is sought. Under our system of jurisprudence, it is error for a trial court to direct a verdict on the ground that the weight of the evidence plainly preponderates on one side or the other. It is the exclusive province of the jury to determine the facts: 1 Randall's Instructions to Juries, § 104; Hughes, Instructions to Juries, § 133. This disposes of the only serious contention in the cause.

We have considered all questions raised on this appeal, but find no reason to reverse the case. Hence we direct its affirmance.                                    AFFIRMED.

BEAN and ROSSMAN, JJ., not sitting.