Argued December 11, affirmed December 21, 1951; petition for
rehearing denied March 5, 1952

WHITEHEAD *v.* MONTGOMERY WARD & CO.,
Inc.

239 P. 2d 226

*Arno H. Denecke,* of Portland, argued the cause for appellant. With him on the brief were Wilbur,

Mautz, Souther & Spaulding, of Portland, and David L. Dickson, of Chicago.

*Burl L. Green* argued the cause for respondent. On the brief were Green, Richardson & Green, of Portland.

Before HAY, Acting Chief Justice, and ROSSMAN, LATOURETTE, WARNER and TOOZE, Justices.

## TOOZE, J.

This is an action by Steve Whitehead, as plaintiff, against Montgomery Ward & Co., Inc., a corporation, as defendant, to recover damages for personal injuries alleged to have been caused by defendant's negligence. The jury returned a verdict in favor of plaintiff in the sum of $2900, and judgment in favor of plaintiff was entered accordingly. Defendant appeals.

The answer denies the material averments of the complaint and for a first affirmative defense alleges that, in consideration of $34.56, paid by defendant to plaintiff, he, the plaintiff, by a written instrument, released and discharged defendant from all claims for damages that he may have suffered in consequence of the injury of which he complains. As a second affirmative defense, defendant pleaded assumption of risk. This latter defense was taken from the jury's consideration, owing to the fact that defendant had rejected the Workmen's Compensation Act of the state of Oregon, and, for that reason, the defense was not available to it.

The reply denied the allegations of new matter in the answer, except it admitted that plaintiff signed the writing referred to in the answer. For a first affirmative reply, plaintiff alleged he had been induced

to and did sign the writing in question by reason of alleged fraud on the part of defendant. For a second affirmative reply, plaintiff alleged nonperformance of the written instrument on the part of defendant. However, no point was made in the trial court, nor is one made here, respecting the matters alleged in this second affirmative reply.

A copy of the writing is attached to the answer as an exhibit, and it is pleaded in haec verba in the reply. The writing is in words and figures as follows:

## "FINAL RELEASE

"FOR AND IN CONSIDERATION of the payment to the undersigned, hereinafter referred to as the employee, by Montgomery Ward & Co., Incorporated, hereinafter referred to as the employer, of the sum of 34.56 Dollars, the receipt whereof by the employee is hereby acknowledged, the employee does hereby release and forever discharge the employer and all others whomsoever from all claims, demands and liability of whatever nature arising out of or in connection with injuries received by the employee on or about the 27th day of October, 1948, at Portland, Oregon, while in the employ of the employer, except as hereinafter stated.

"Upon written application made to the employer by the employee within the time limited by the Workmen's Compensation Law of the State of Oregon for filing claims, the employer will continue or resume the payment of compensation in accordance with the terms of said Workmen's Compensation Law in the event there shall be a recurrence or aggravation of the disability resulting from said injury.

"Whether or not there has been a recurrence or aggravation of such disability, and the extent and date of recovery therefrom, shall be determined in the first instance by the physician then regularly designated by the employer to treat

employee injuries at the location of the employee's injury, or if that physician is not available for any reason, by the physician then attending the employee. If either party is dissatisfied with the decision of the designated physician or attending physician, the case shall be reviewed by the employer's company medical director, whose decision on all matters referred to in this paragraph shall be final and binding on both employer and employee.

"Dated at Portland, this 19 day of Nov., 1948.
"Executed in the presence of:

|  | [Sgd.]  Steve Whitehead |
|---|---|
| [Sgd.]  R. Davis | Employee |
|  | Steve Whitehead" |

Upon conclusion of the trial and before argument of counsel, defendant moved for a directed verdict as follows:

"I move at this time for the Court to direct a verdict for the defendant on the ground that there has been no showing of any negligence on the part of the defendant in any of the allegations set out in the complaint, and if there were any evidence of negligence, such negligence was not the proximate cause of any injuries that the plaintiff may have suffered, and for the second reason, that there is no evidence that the defendant through any of its agents made any fraudulent representations to the plaintiff on which the plaintiff relied to sign the final release, Defendant's Exhibit 1."

The trial court denied the motion, and this ruling forms the basis of defendant's first assignment of error. Defendant's additional assignments of error relate to certain instructions given to the jury and to others requested by defendant, which the court refused to give.

In presenting its first assignment of error, defendant confines its attention to the second ground of the

motion. No contention is made here that there was insufficient evidence to submit to the jury the question of negligence on the part of defendant. But defendant does seriously contend that there is no substantial evidence of fraud in connection with the execution of the above writing. Manifestly, in the absence of such evidence, the writing would be a valid release and discharge of defendant and a complete defense to this action.

■ To decide the question raised by this assignment of error requires a review of the evidence, and the evidence must be considered in the light most favorable to plaintiff. *Pond v. Jantzen Knitting Mills,* 183 Or 255, 257, 190 P2d 141.

■ Plaintiff was employed by defendant in August, 1945, and in late 1947 or early 1948 was transferred to the salvage room. It was while he was employed in the salvage room that plaintiff suffered the injury of which he complains in this action. This salvage room is located on the eighth floor of the building in which defendant conducts its principal business in Portland, Oregon. In its operations, defendant uses power-driven machinery and, by reason thereof, is engaged in a hazardous occupation as defined by the Workmen's Compensation Act of the state of Oregon. § 102-1725(a), OCLA. Acting pursuant to the provisions of this Act and prior to the events involved in this proceeding, defendant had rejected the same. § 102-1713, OCLA.

■ On October 27, 1948, while engaged with another in the act of lifting a loaded box, plaintiff wrenched his back. He immediately suffered a sharp, stabbing pain in his lower back. By reason thereof, plaintiff was rendered totally unable to perform labor until November 9, 1948, at which time he returned to do

light work on the advice of Dr. Trommald that such
activity would be beneficial to him. From the date
of the injury until the trial commenced on February
27, 1950, plaintiff suffered a constant ache and fa-
tiguing feeling in his back with occasional pains shoot-
ing down his left leg and was forced to sleep on a bed
with a board under the mattress. As late as February
20, 1950, Dr. Winfred H. Clarke, an orthopedic special-
ist, found involuntary muscle spasm in the plaintiff's
lower back. An attempt was made by defendant to
show that some of this pain might have been due to
a subsequent wrenching of the back by plaintiff while
loading some equipment in his automobile as an em-
ploye of the Kirby Company. But this was a jury
question. There is substantial evidence in the record
from which the jury might well have found that plain-
tiff sustained a serious and painful injury as a result
of defendant's negligence.

On November 19, 1948, plaintiff was directed to
report to the office of the personnel manager of de-
fendant, and he did so. What occurred at that time
and place can best be explained by quoting from his
testimony when called as a witness by defendant:

"Q  Mr. Whitehead, I want you to look at this
document, Defendant's Exhibit 1, and tell us, do
you remember the situation when you signed the
document? Will you tell us what the circumstances
were under which you signed that document?

"A  Well, yes. A lady [Mrs. Rosemary E.
Davis, secretary to the personnel manager] out
there presented it to me in what I call the front
office — — — —

"Q  (interrupting) Let me ask this question:
How did you happen to go down to the front office?

"A  I was told from the supply office that I
was wanted down at the front office. * * * I went

down. I wasn't told what I was going down for, and that document was presented to me. I was also told that my compensation check was there waiting for me. I looked at it and I asked if that was a release from my present injury, and I told the lady that handed it to me that I was still under their doctor's care, that he wanted more X-rays, and it was understood between he and our department manager that I was still to continue with this light work that I was doing. She said well, *in a case of that kind it wouldn't be considered a release, but it would be necessary for me to sign it in order that they had a receipt that I had received this money.* That was the substance of what took place.

"Q I want to get this straight. Did you ask this lady if this was a release?

"A Yes, I did.

"Q And what did she tell you?

"A I had in the meantime told her the circumstances under which I was working, and *she said no, that it wouldn't be a release, that it would merely be a receipt to show that I had received this compensation check.*

"Q Let me ask you, at that time, Mr. Whitehead, did you have your glasses with you?

"A No, I did not. * * *

"* * * * * *

"Q Could you read that print without glasses?

"A Not that.

"Q Did you tell the young lady that you didn't have your glasses? Do you remember telling her that, and that you couldn't read it?

"A I believe I said I couldn't read it because I didn't have my glasses with me.

"Q Did she read it over to you and tell you what was in it?

"A No, she didn't. * * *

"* * * * * *

"Q At the time that you signed this document on November 19th, as it purports, 1948 what was the condition of your back at that time?

"A Well, it was still very painful, as I had just recently returned to the job.

"Q Before signing this document did you consult a lawyer or counsel to see whether you should sign it or not?

"A Why, no, *I just took it for granted that it would be carried out as I had been told it would. We ordinary people don't mistrust others,* and we don't go into a thing like that. *We take the party as being responsible, especially the supervisory authority.*

"Q I beg your pardon?

"A I say, we take the personnel office out there as a responsible party and feel that they know what they are doing for the betterment of everybody, and when we are presented with a paper like that we don't have the idea of taking it to an attorney to have it deciphered before we sign it.

"Q *Did you rely upon what she stated about this document before you signed it?*

"A *Why, absolutely.*

"Q Mr. Whitehead, as I take it from your answers to what Mr. Denecke has asked you, the only money that you have received from Montgomery Ward for this injury is this sum of $34.56. Is that correct?

"A That is correct.

"* * * * * *

"Q Mr. Whitehead, looking at this document, Defendant's Exhibit 1, is it your testimony that at the time you signed that you were unable to read any portion of that?

"A No, that larger print there.

"Q And the larger print is the print at the top?

"A That is right.

"Q And that states "Final Release"?

"A Yes, that was why I told the lady of the circumstances under which I was working, and was told that that wouldn't be considered a release; by me signing it it would merely show that I had received that money.

"Q You didn't ask the girl to read you this document?

"A No, I didn't.

"* * * * * *

"Q Did this lady inform you at that time, Mr. Whitehead, that this was a complete release?

"A No.

"Q Did she inform you that you were releasing them from any partial disability that you might have to your back from this original injury? Did she tell you that?

"A No.

"Q Did she tell you that you were releasing any right that you might have to have a permanent partial award made because of the disability to your back?

"A No, there was no conversation like that at all.

"* * * * * *

"Q (by Mr. Landye) Did this lady tell you, Mr. Whitehead, that whether or not there was a recurrence or an aggravation of that disability and the extent and the date of recovery therefrom was to be determined in the first instance by the regular designated doctor of Montgomery Ward, and that he was to be the judge of it?

"A Why, no.

"Q And did they also tell you that if he wasn't available and you got another physician to determine it and then there was an argument between your physician and Montgomery Ward the final decision as to whether there was an aggravation and the extent of it was to be determined by the

Company's medical doctor which was to be final and binding on you?

"A No, none of that was brought out, and I couldn't read it and I didn't know that was in there.
"* * * * * *

"Q (by Mr. Landye) Did this lady tell you that when you took this thirty-four dollars, any disability that you had from your back from this original injury that you had released that completely?

"A *No, that I was only signing a receipt for that thirty-four dollars. That is all I understood that I was signing.*

"Q In other words is this correct, that as far as you knew when you signed it all you were signing was a receipt for thirty-four dollars, which was compensation for the days you were off, and that is all?

"A That is correct." (All italics ours.)

Mrs. Rosemary E. Davis was called by defendant as a witness. She testified that she had been employed as secretary to the personnel manager for approximately three years. She also stated that she handled an average of one case a month such as is involved here. According to her testimony, the release form and compensation check were made up in San Francisco and mailed to her in each case. The compensation check covers the amount of "time loss" due the employe while he is temporarily disabled. She claimed that the provisions of the writing referring to the Workmen's Compensation Act gave to the employe all the benefits provided for injured workmen under that law, though she admitted that some of those benefits were not written into the document. She claimed that, when plaintiff reported to her, she handed him the written release to read, and that he read it. She denied that there was any conversation such as plaintiff related, but her denial lacked much of being

unequivocal. For example, in reply to the question: "Specifically, did you make those statements that Mr. Whitehead just testified you did make?," she said: "I am sure I didn't, because I never have had to after they have read the document." As a witness she volunteered considerable testimony, at times was argumentative, and on a whole assumed an attitude such as might be expected only of a party litigant. It is evident from the result of the trial that the jury rejected her version of the transaction.

■ But irrespective of the testimony of Mrs. Davis, we are bound to assume that plaintiff's statement as to what occurred in connection with the execution of this writing is true. Does that statement establish fraudulent conduct sufficient to defeat the alleged release? We think it does.

■■ In connection with the alleged settlement, defendant was represented by Mrs. Davis. The evidence discloses that she had the authority to procure plaintiff's signature to the writing and to deliver to him the compensation check. It was her business to close the matter. Defendant is bound by what she told plaintiff.

■ Defendant argues that the representation made by Mrs. Davis to the effect that the writing was not a release, but a receipt for the money paid, is not a representation of fact, but of law. It is obvious, however, that her representation was much more than a statement of law. When she told plaintiff that the writing would be considered and treated simply as a receipt for money paid, she made a representation of a material fact. Plaintiff refused to sign the writing until he had been given this assurance. He could not read the document, except the words "FINAL RELEASE," nor was it read to him. His attention was not directed to any of its provisions. He was not

informed that, by signing this writing, his right to any future payments on account of his injury would be for final determination by defendant's own medical director. Neither was he advised that, though the writing mentioned benefits, he would receive according to the provisions of the Workmen's Compensation Act; nevertheless, if he signed, there were certain benefits under that law that he would not receive. In effect, he was told that the signing was more or less a formality. The amount paid merely covered the time loss from October 27, 1948, to November 9, 1948, computed according to the schedule of the Workmen's Compensation Act for temporary total disability. Plaintiff, before signing the instrument, did not have the benefit of independent legal advice. At the time he was engaged in light work, being unable to perform any other kind. For this he was receiving his full pay, something he could not expect to receive at the hands of another employer. Naturally he was interested in keeping his job with defendant; he could not afford to have any trouble. He relied upon what Mrs. Davis told him, and, under the facts and circumstances of this case, he had a right to rely thereon.

■ When Mrs. Davis represented to plaintiff that the writing was to be considered as a receipt, and not a release, it is clear she intended he should rely upon her statement. From the experience she had had in similar settlements over a period of years, as disclosed by the evidence, the jury would be entitled to infer that she knew her representation to be false; that she made it with intent to mislead and deceive plaintiff and to induce him to sign the document. From plaintiff's testimony it is evident that he actually was misled and deceived by the representation and, relying

thereon, was induced to and did execute the alleged release.

■ This court has been called upon in many cases to consider questions similar to those presented in the instant litigation. In some cases fraud has been found to exist, while in others the evidence fell short of establishing it. Every case must necessarily depend upon its own facts and circumstances. There is no rule which will fit every situation.

In *Broad v. Kelly's Olympian Co.*, 156 Or 216, 66 P2d 485, Mr. Justice Rossman, speaking for the court, reviewed most of our prior decisions and pointed out the distinctions to be drawn between them. It is unnecessary for us to repeat that discussion.

In that case the plaintiff had legal advice prior to signing the release. The amount he was paid in settlement was clearly adequate for the injuries he had received. There were other circumstances in the case which threw considerable doubt upon plaintiff's claim. The release was sustained. However, after reviewing the cases in which a release was held ineffective, the court, at page 232, said:

> "In virtually all of these cases the decision commented upon the great disparity between the amount paid and the actual damages which the party sustained.
> "It will be observed that in none of these cases did the plaintiff have any independent advice—none by an attorney. In at least four of the cases the defendant or his agent gave the plaintiff false advice in regard to his claim. In virtually all of them the plaintiff thought he was signing a receipt, and not a release."

In the instant case every distinguishing feature to which the court called attention above is present. Here there is a great disparity between the amount paid to

plaintiff and the actual damages sustained. Certainly no one would have the temerity to contend that $34.56 was adequate compensation for the suffering plaintiff underwent for a period of approximately fifteen months prior to trial and still was undergoing at the time of trial. The jury fixed his damages at $2900. That is some indication, at least, of the extent thereof.

Also, plaintiff did not have any independent advice. Furthermore, defendant falsely advised plaintiff regarding his claim and, by failing to disclose to him the contents of the writing, concealed from him material facts respecting the same. Moreover, plaintiff thought the writing he was signing was a receipt, not a release, a thought he had the right to entertain under the facts of this case.

See also *Peluck v. Pac. Machine & Blacksmith Co.,* 134 Or 171, 293 P 417; *Wood v. Young,* 127 Or 235, 271 P 734; *Bissett v. Portland Ry., L. & P. Co.,* 72 Or 441, 143 P 991.

The conclusion we have reached that this writing is ineffective as a release and discharge on the ground of fraud renders unnecessary a discussion of the contention urged by plaintiff that it also is contrary to the public policy of the state of Oregon concerning injured workmen and, therefore, void.

Defendant assigns as error the giving of the following instruction to the jury:

"You are instructed that a release such as that set up in defendant's first affirmative defense, to be valid and binding, must be executed with full knowledge on the part of the releasor, the plaintiff in this case, of what he is signing and with an intention to discharge the defendant, Montgomery Ward & Co., Inc., from liability. In other words, if the instrument signed is not what the releasor supposed he was signing, the mental assent neces-

sary to constitute a binding contract is absent. You are further instructed that the mere failure of plaintiff to read said release does not of itself preclude recovery.''

■ Defendant's counsel contends that the instruction is erroneous, because, as he argues, subjective assent and understanding are not necessary to create a binding contract. He quotes from *Upton, Assignee, v. Tribilcock*, 91 US 45, 23 L ed 203, as follows:

''That the defendant did not read the charter and by-laws, if such were the fact, was his own fault. It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.''

■ ■ The foregoing is an apt statement of the general rule applicable to written contracts. But this rule, like most other rules, has its exceptions. Where failure to read the writing is due to inability to do so, one cannot be held responsible for such failure. Neither can one be held responsible for signing a contract which has been induced by the fraud of the other party. This rule is announced in *Ingram v. Carlton Lumber Co.*, 77 Or 633, 638, 152 P 256, cited by defendant, as follows:

''The plaintiff had a common school education and could read and write. The instrument [release] fixed the rights of the contracting parties *unless the same is set aside on account of fraud* or some like reason properly pleaded. Without averring some mental defect disqualifying him to make a contract, *or some fraud or deceit* practiced upon him by the

defendants, it will not avail him to allege merely that he did not understand the document in question." (Italics ours.)

■ It is true that under ordinary circumstances a person is not excused from the consequences of signing a paper which he negligently failed to read, but there is a vast difference between negligently failing to read a document and, for some sound reason, being wholly unable to do so. *Foster v. University Lumber Co.,* 65 Or 46, 131 P 736. As has so often been said: "Circumstances alter cases."

■ The instruction to which exception is taken is but one of a series of instructions respecting the release and the question of fraud in relation thereto. This court has repeatedly held that the instructions of the court must be considered in their entirety. As was said in *Parmentier v. Ransom,* 179 Or 17, 24, 169 P2d 883:

> "It is the settled law of this jurisdiction that instructions are to be considered as an entirety. It is immaterial that one or more of them, considered separately and without reference to the instructions as a whole, may be erroneous, if from the instructions as a whole the jury were correctly charged as to the law in its application to the facts."

Immediately prior to giving the questioned instruction, the court had instructed the jury as follows:

> "Now with respect to another phase of this case, it is claimed that an agreement or release referred to in this trial was fraudulently obtained. I instruct you that the presumption in law is that the agreement and release was legally and properly obtained without fraud, and the burden of proof in this respect is upon the plaintiff to prove his allegations by a preponderance of the evidence that the agree-

ment and release was fraudulently obtained as charged by him, and if you find that the plaintiff does not prove this to your satisfaction by a preponderance of the evidence, then the plaintiff cannot recover.

"When the transaction is equally susceptible of two explanations, one of which is that it is fraudulent, and the other that it is consistent with good faith and fair dealings, then in that event I instruct you that the explanation which is consistent with good faith and fair dealing is to be preferred."

Following the giving of the instruction objected to and in continuing its discussion of the same subject matter, the court told the jury:

"In determining whether or not the defendant through its employees made fraudulent misrepresentations to induce the plaintiff to sign the final release, I instruct you that the fact that the plaintiff made an unwise bargain is not in and of itself a sufficient reason for you to find that the plaintiff's execution of the release was induced by the fraudulent misrepresentations of the defendant.

"I instruct you that if you find that the plaintiff did not understand the final release that fact in and of itself is not a sufficient ground to allow you to find that the release was procured by fraud.

"I instruct you that if you find defendant practiced no fraud upon the plaintiff to prevent the plaintiff from reading the document relied upon by the defendant as a release, and you find that the plaintiff chose to rely upon what the defendant said the document contained without requesting that it be read, then your verdict must be for the defendant. On the other hand, if false representations are made and relied upon by another, in obtaining a signature to a writing, it is not binding on the person so signing although he did not read it or request that it be read to him."

■ If the instruction under consideration stood alone, there might be some merit in defendant's contention. But when it is read and considered in the light of the other instructions given, it was not an erroneous statement of the law as applied to the facts in this case.

In *Wood v. Young*, 127 Or 235, 240, 271 P 734, we said:

"From 24 Am. & Eng. Ency. of Law (2 ed.), page 308, we take the following pertinent observation with relation to release of claim for personal injuries:

" 'Where one receives injuries in a railroad or other accident, it is a general practice to procure from the injured person a release of damages, often while he is suffering from the effects of the accident, and usually upon payment of a small sum of money. * *

" 'Where the releasor signs a paper under the impression induced by the releasee that he is signing merely a receipt for money already paid, or a release of a part of his claim only, and the effect of the instrument as a general release is misstated and misrepresented, and the releasor is guilty of no negligence in accepting such statement, the release is of no effect. In other words, if the instrument signed is not what the releasor supposed he was signing, mental assent necessary to constitute a binding contract is absent.'

"As to what constitutes a valid release, we take the following from 23 R. C. L., page 386:

" 'To be valid and binding, a release must be executed with full knowledge on the part of the releasor of what he is signing, and with an intention to discharge from liability.' "

Defendant next complains of the giving of the following instruction:

"I instruct you that an agreement of settlement and release obtained from an injured person, who

acts without independent counsel or advice, should be scrutinized with great care, and if you find from a preponderance of the evidence in this case, proof of any fact or facts showing that the defendant, or its agent or agents, acted fraudulently in obtaining his signature to a release form and in procuring settlement under such circumstances, then you would be warranted in finding that such settlement was of no effect, and that under such circumstances the plaintiff did not validly release his claim against the defendant.''

This instruction immediately followed the giving of the instruction hereinbefore discussed. Defendant saved the following exception to it:

''The defendant further excepts to the Court instructing the jury that a release signed without first consulting counsel should be scrutinized with great care, *for the reason that under the circumstances as shown by the evidence the plaintiff was at the time of the signing of full mental competence, was not in a hospital, and had been back at his job for a period of approximately nine days.''* (Italics ours.)

Defendant, in its brief, asserts that this instruction was an erroneous statement of the law and constituted an erroneous comment on the evidence; yet in taking its exception, no such claim was made. Neither did the exception include the claim now made by defendant that ''the instruction given erroneously commented on the weight of the evidence and told the jury that the document was suspect.''

It is a well-established rule in this state that an exception must be timely made and must bring to the attention of the trial court all of the grounds upon which it is based, before it may be considered in this court. Where the objection urged to the instruction was not presented to the trial court, it cannot be con-

sidered here for the first time. *Suko v. Northwestern Ice Co.*, 166 Or 557, 573, 113 P2d 209; *Bramwell v. Rowland*, 123 Or 33, 49, 261 P 57.

In this court defendant has abandoned the grounds it urged in the lower court in its exception to the instruction under discussion, as no argument was presented thereon, either in defendant's brief or upon the oral argument. Aside from that, however, there is no merit in the exception as taken.

In any event, there is little doubt that the instruction was based upon what this court said in *Nielsen v. Portland Gas & Coke Co.*, 76 Or 505, 512, 147 P 554:

"An agreement of settlement and release obtained from an injured person who acts without independent counsel or advice should be scrutinized with great care, and, upon proof of any fact or facts fairly tending to show fraud or unconscionable advantage in obtaining it, a jury would be warranted in finding such settlement to be of no effect."

Defendant next objects to the following instruction:

"You are instructed that the provisions of the release in this case did not give to the plaintiff the same benefits that are provided to workmen by the Workmen's Compensation Act of the State of Oregon."

Defendant's exception to this instruction was:

"Defendant further excepts to the Court instructing the jury that the plaintiff in this case was not entitled to the same benefits as he would receive under the Workmen's Compensation Act of the State of Oregon."

The exception taken fails entirely to state any ground why the giving of this particular instruction was improper. It did not present any reason to the

trial court why the instruction should not have been given.

In this court defendant contends that "the above-quoted instruction is erroneous because the Court instructed the jury that the respondent would have received benefits under the Workmen's Compensation Act of Oregon which he would not receive under the terms of Defendant's Exhibit 1." Even in this contention defendant fails to point out any error in the court's statement. It is clear the instruction contained a true recitation of fact, because, had plaintiff been under the Workmen's Compensation Act, there are a number of benefits he would have received which are not covered by the terms of the release. For example, under the Workmen's Compensation Act, plaintiff could have asked for a permanent partial disability rating and, if denied, could have had the question determined by a jury. § 102-1756, OCLA, as amended by ch. 396, Oregon Laws 1947. The provisions of the release afford him no such remedy. Further, as to the matter of aggravation, the Workmen's Compensation Act allows an injured workman two years from the date of the first final award of compensation within which to apply for increased compensation on account of aggravation, and if the application is denied, he may have the final determination made by a jury. § 102-1771, OCLA, as amended by ch. 381, Oregon Laws 1945. Under the release, the final determination of aggravation is made by defendant's own medical director. There are additional benefits under the Workmen's Compensation Act not present under the terms of the release, but the foregoing statements are sufficient for our present purpose.

■ Because of the fact that the release mentioned benefits under the Workmen's Compensation Act, and

to the further fact that on the trial considerable testimony was introduced regarding such benefits, the foregoing instruction was necessary and proper to avoid confusion and misunderstanding on the part of the jury with respect to several ill-founded claims made by defendant through its witness, Mrs. Davis, as to what was covered by the terms of the document plaintiff signed.

Assignment of error numbered V relates to a certain requested instruction which the court failed to give. However, the court did, in its instructions to the jury, fully cover the subject matter of this request. No good purpose would be served in setting forth the request, nor by further discussing it.

■ Defendant then assigns as error the failure of the court to give the following requested instruction:

"I instruct you that if you find that Mrs. Davis made statements to the plaintiff which were not true, and if you further find that Mrs. Davis did not know that these statements were untrue or did not recklessly make them without concern as to whether or not they were true or false, I instruct you that such representations or statements do not constitute fraud, then your verdict must be for the defendant."

As applied to this case, the foregoing requested instruction is improper, and the trial court did not err in refusing to give it.

■ A release such as is involved in this case stands upon the same footing as any other contract. In order to defeat it on the grounds of fraudulent conduct, it is not necessary that every essential element of actionable fraud be established. If the evidence discloses that plaintiff was induced to enter into this agreement by means of defendant's fraud or material misrepresentation, the transaction is voidable as

against defendant, and, in this respect, it is immaterial that the misrepresentation may have been innocently made. Where a false representation of a material fact is made, and the party to whom it is made is induced to and does rely thereon in entering into the agreement, that is sufficient for the purpose of avoiding the contract, irrespective of the intent and purpose of the person making the false representation. Here, plaintiff is disaffirming the contract; he is not affirming it as would be the case were this an action for deceit. In *Blair v. McCool*, 136 Or 139, 150, 295 P 950, 298 P 244, this court quoted with approval from *Texas Central R. R. Co. v. Neill*, 159 SW 1180, as follows:

"If representations made to secure a release for liability because of personal injuries, were in fact false, the fact that the person making them believed them to be true would not prevent the injured person from having the release set aside."

See also *Weiss v. Gumbert*, 191 Or 119, 227 P2d 812, 819; *Sharkey v. Burlingame Co.*, 131 Or 185, 197, 282 P 546, 550; 17 CJS, Contracts, 502, § 147; Restatement, Contracts, 908, § 476.

■ We note further that this instruction relates to what Mrs. Davis may have known or may not have known, and to whether or not she acted recklessly. Mrs. Davis' state of mind is not the important thing. She was merely the mouthpiece for defendant. It is with what defendant did or did not do that this case is concerned.

■■ Defendant argues that the doctrine of rescission is not present in this case because "there was not tender back of the consideration." Upon rescission, it is not required that a party restore that which he is entitled in any event to retain. 17 CJS, Contracts, 923, § 439. Clearly, plaintiff was entitled to receive and

retain the amount paid him for his "time loss," and he was not required to restore the same as a condition to disaffirmance of the contract.

As its final assignment of error, defendant urges that the trial court erred in refusing to give the following requested instruction:

"In the event that you find that the plaintiff did not have sufficient room to lift the carton in safety, and you further find that the plaintiff was reasonably able at such time to make sufficient room so that he could lift the carton in safety, then you cannot find the defendant negligent and your verdict must be for the defendant."

As applied to this case, the requested instruction was improper. Although ostensibly an instruction dealing with the question of defendant's negligence, nevertheless, the giving of it would, in effect, have been tantamount to submitting to the jury the question of contributory negligence. Also, indirectly, at least, the requested instruction embraces the doctrine of assumption of risk. Under the facts in this case, neither the defense of contributory negligence nor that of assumption of risk was available to defendant, § 102-1713, OCLA.

We have given careful consideration to the instructions of the trial court as a whole, and we find that the jury was fully, fairly, and correctly instructed respecting the principles of law applicable to the issues in the case. There is no reversible error in the record.

Judgment affirmed.