Argued December 17, 1958, reversed March 25, 1959

# RAMSAY SIGNS, INC. *v.* DYCK

337 P. 2d 309

*Nathan Weinstein,* Portland, argued the cause and filed briefs for appellant.

*Alton John Bassett,* Portland, filed a brief for respondent.

Before LUSK, Presiding Justice, and ROSSMAN, WARNER and SLOAN, Justices.

LUSK, J.

The plaintiff, Ramsay Signs, Inc., brought this action against Georgia Dyck, dba Ramapo Hotel, to recover damages in the sum of $3,132.00 for the breach of a written lease of a neon sign, $245 unpaid rental, and $600 attorney's fee. A jury trial resulted in a verdict for the defendant, and from the consequent judgment the plaintiff has appealed.

The question for decision, properly raised on the record and in the brief of the plaintiff, is whether the circuit court erred in receiving parol evidence as to the interpretation to be given to a provision of the lease and in submitting to the jury the construction of that provision.

In 1954, the defendant, Mrs. Georgia Dyck, owned

and operated the Ramapo Hotel in Portland, Oregon. For some time before the execution of the lease with which this case is concerned, there was displayed on the building a "vertical" sign which had been installed by Ramsay. The lease of this sign had expired, and the sales manager of Ramsay, Mr. Conrad V. Davis, had been endeavoring to get Mrs. Dyck to renew it. In August, 1954, during a discussion of this subject, Mrs. Dyck told Davis that she would like to have a new marquee sign; that she was thinking of selling, and that the marquee sign would help the building to sell and she would like it for herself if she decided to stay there. This conversation resulted in the execution of the lease here in issue. It is entitled "Lease and Service Agreement," and is dated August 25, 1954. It is on a printed form, covers a "Marquee style sign" on which the reading matter is to be "Ramapo Hotel", and includes the "vertical sign now installed", runs for 96 months, and calls for a rental of $49.00 a month. By the terms of the lease, Ramsay agreed to maintain the sign after installation in good working order and condition. It is provided that the lessee shall not sell, assign or dispose of the sign or any part thereof and shall not assign the lease or sub-let the sign without the written assent of the lessor. It also contains a provision inserted at the request of Mrs. Dyck, which reads:

> "In the event Lessee sells business, Lessor agrees to negotiate with new owners for a new contract, or new owners may purchase sign at that time."

The construction of this clause is the question at issue.

In February, 1955, Mrs. Dyck sold the hotel to Milner Hotels Management Co., Inc. On learning of the sale, Ramsay offered the purchaser the opportunity

to take over the lease of the marquee sign, but the purchaser decided to change the name of the hotel, and consequently was not interested in the proposal. Ramsay was compelled to remove the sign, which the evidence shows is practically without value. Mrs. Dyck refused to pay rent after the sale, and Ramsay brought this action.

In her answer, Mrs. Dyck, after setting forth the provision of the lease in question, alleged that after she sold the hotel "the plaintiff has refused to comply and continues to refuse to comply with the terms of the said contract." She was permitted to testify, over proper objection of the plaintiff, to her conversation with Davis preceding the execution of the agreement. She testified that she asked Davis whether in the event she sold the hotel the contract would "tie me up" and he assured her that it would not; that he said, "All you have got to do, the day that you sell this place is, to your broker, have him call the Ramsay Sign Company and say that you have sold and we will take over from that and you don't have to worry, you are out of it." Again she testified that her idea about the meaning of the clause was that it absolutely relieved her from liability in the event that she sold the hotel.

The court, in its charge, told the jury that the language of the clause was ambiguous, that in particular the word "negotiate" had various meanings, and, in substance, that it might mean either "to conclude by bargain or agreement" or "to treat or contact with a view to coming to terms of some matter, such as a purchase or sale, or to conduct communications or conferences as the basis of agreement." The court further instructed the jury:

"If you find that the provision in controversy only required plaintiff to deal with the buyer for

the purpose of having the buyer take over or assume the contract in question for purchasing the sign, and you further find that plaintiff did so in good faith and in a reasonable manner, then the fact that the buyer did not take over or assume the contract or buy the sign is not a bar to a recovery by plaintiff.

"On the other hand, if you find that the provision in controversy relieved the defendant from the contract upon the sale of her business, or required the plaintiff to close or consummate an agreement with the buyer to take over or assume the contract or buy the sign, then such failure is a bar to a recovery by the plaintiff."

Thus, in plain language, the issue which the court submitted to the jury was whether the plaintiff had agreed to get the new owner to take the lease off Mrs. Dyck's hands or whether it had merely agreed to try to do so. If the former, she was not liable; if the latter, she would be liable if Ramsay complied with its agreement by making a reasonable effort to induce the new owners to lease the sign.

■ It is true that the word "negotiate" has the varying meanings expressed by the court in its instructions. But the meaning of words which might be otherwise doubtful is to be determined by the context in which they are found. The plaintiff did not agree in the event of a sale of the hotel "to negotiate a new contract with the new owners." Had it done so, it would not be difficult to sustain the defendant's position. What the plaintiff did agree to do was "to negotiate *with* new owners *for* a new contract"—an entirely different thing. Neither the position of the word "with" in the phrase nor the presence of the word "for" can be ignored. "For", in that context, means "with a view to; in order to effect." Funk & Wagnall's New Stand-

ard Dictionary. If the word "negotiate" in this phrase is interpreted as "to conclude by bargain or agreement," the clause becomes meaningless. It would then read, "to conclude by bargain or agreement with the new owners for a new contract."

■ It is axiomatic that every word in a sentence, clause or phrase is to be given its just effect in order to arrive at the meaning of the whole. By failing to observe this rule in this case, ambiguity results. But when the phrase is read in its entirety, the meaning is free from doubt. Similar language was involved in *Delbon v. Brazil*, 134 CalApp2d 461, 285 P2d 710. There, a real estate broker's contract contained an agreement that the broker was to be paid a commission, first in the event of a sale between certain dates, or, second, if a sale should be made within thirty days thereafter to any person with whom the broker had "negotiated for a sale" during that period. The court said, "Obviously, negotiation for a sale is something less than an actual sale."

■■ The effect of the judge's instruction was to authorize the jury to determine that if the defendant sold the hotel, she would be released from her obligations under the contract of lease. If that is what had been intended, certainly very different language would have been used. The testimony as to what was said by the parties prior to execution of the contract should have been excluded, as it contradicted the written terms of the agreement. The court should have construed the contract and should have instructed the jury that if the plaintiff made a reasonable effort to secure a new contract with the purchaser of the hotel then the plaintiff was entitled to recover.

■ As to the remaining words of the clause, "new owner may purchase sign at that time," the court in-

structed the jury that these words "are self-defining and are to be considered in their general usage and meaning as you would experience in your daily affairs, and hence, no further elaboration thereof is needed." Obviously, the court thought that these words were not ambiguous and the defendant does not contend that they are. Their obvious effect, in our opinion, is to grant to the defendant the necessary written permission to sell the sign to the new owner in the event of a sale of the hotel.

■ No fraud or mistake or lack of business acumen or inability to understand the English language is claimed in this case; it is not a suit to reform a written instrument. It may be that it is a hardship case from the standpoint of the defendant, but courts are not authorized because of harsh consequences to rewrite the terms of a contract.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.