Argued September 11, reversed November 22, petition for rehearing denied December 29, 1961

## WHEELER *v.* WHITE ROCK BOTTLING CO.

366 P. 2d 527

*Duane Vergeer,* Portland, argued the cause for ap-

pellant. With him on the brief were Charles S. Crookham and Vergeer & Samuels, Portland.

*George L. Wagner,* Portland, argued the cause for respondent. With him on the brief were John Gordon Gearin and Koerner, Young, McColloch & Dezendorf, Portland.

Before McAllister, Chief Justice, and Sloan, O'Connell, Goodwin and Brand, Justices.

GOODWIN, J.

Defendant appeals from a decree permitting plaintiff to rescind a release and proceed with an action for damages for personal injuries.

Defendant's truck collided with the automobile in which plaintiff was riding. As a result of a painful back, plaintiff consulted her family doctor whom she was also seeing in connection with a pregnancy. He told her she would continue to have pain until after the pregnancy was completed, but diagnosed the injury as a back strain. A written copy of this diagnosis was furnished the defendant's insurer. Three months after the accident, plaintiff signed a document releasing defendant from all claims for injuries known and unknown resulting from the accident. At that time, plaintiff and the insurance adjuster who obtained the release both thought the plaintiff's injuries were as indicated by her doctor.

Two months after signing the release, the plaintiff discovered that her condition was far worse than she had contemplated when she agreed to settle her claim. Solely for purposes of this appeal, we shall assume that defendant was responsible for plaintiff's present infirmities.

The court below decreed rescission, and also inci-

dentally made a finding that plaintiff did not mean to release defendant from "unknown" and "unsuspected" claims. Thus, it is not clear whether the trial court rescinded the release, or reformed it so as to spell out the supposed intent of the parties.

Since this case turns in part on the wording of the release, we set it out in full:

"RELEASE OF ALL CLAIMS

"FOR AND IN CONSIDERATION of the payment to me/us at this time of the sum of *Five Hundred and No/100* Dollars (*$500.00*) Dollars by *White Rock Bottling Co.* the receipt of which is hereby acknowledged, I/we do hereby forever discharge the said *White Rock Bottling Co.* of and from all claims, demands, damages, actions or causes of action on account of damage to property, bodily injuries or death resulting or to result from an accident which occurred on or about the *12th* day of *Aug* 1958, by reason of *auto-truck accident on Union at or near Knott Portland - Oregon.*

"It is understood and agreed that this is a FULL AND FINAL RELEASE of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected.

"I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act.

"WITNESS *our* hand and seal this *5th* day of *Nov*, 1958.

"CAUTION! READ BEFORE SIGNING
Charles
[signed] C. R. Wheeler _____ (Seal)
[signed] Louise Wheeler _____ (Seal)"
"IN PRESENCE OF
[signed] H. L. Young _____
                              "

Stripped of nonessentials, this appeal presents with singular clarity the question whether an honest release, untainted by unconscionable conduct, can be set aside because it was improvident. There is no dodging the question. The plaintiff did not show any misconduct on the part of the defendant or its insurer, and thus eliminated from consideration such cases as *White-head v. Montgomery Ward & Co., Inc.*, 194 Or 106, 239 P2d 226. She admitted that she read and fully understood what she was signing, and thereby eliminated consideration of alleged misunderstanding dealt with in such cases as *Wood v. Young*, 127 Or 235, 271 P 734, as well as in the *Whitehead* case, supra.

The trial court followed the numerical weight of authority in other jurisdictions, the precise question not having heretofore been presented to this court. In allowing the plaintiff to repudiate her release, the trial court made two findings of fact upon which the decree is apparently based:

"VI. Plaintiff read and understood the release but intended releasing only her claim for the sacro-iliac and lumbar strains. [She now has a herniated disc.]

"* * * * *

"VIII. At the time of the execution of the release all parties concerned were mistaken as to the nature and extent of the injuries sustained by plaintiff as the result of the accident."

We set forth the two findings because they lay bare the difficulty in pinning down the rationale of the decided cases. Some cases seem to base relief upon real or supposed① mutual mistake. E.g., *Clancy v. Pacenti*,

___

① True mutuality should permit the insurer to follow up its overpayments and rescind releases in cases where the injuries are less serious than first supposed.

15 Ill App2d 171, 145 NE2d 802, 71 ALR2d 77 (1st Dist., 1951). *Contra, Thomas v. Hollowell,* 20 Ill App 2d 288, 155 NE2d 827 (4th Dist., 1959). Other cases seem to reform the release. Thus, the court rewrites it as if to read: "I release all claims for injuries presently known and appreciated by me, but reserve all aggravations and future disorders not presently known or discernible." See, e.g., *Couillard v. Charles T. Miller Hospital, Inc.,* 253 Minn 418, 92 NW2d 96; *Ruggles v. Selby,* 25 Ill App2d 1, 165 NE2d 733 (1st Dist., 1960). This last case, incidentally, is a classic hardship case, and a good illustration of the haziness which surrounds the real reasons for relieving plaintiffs of their improvident contracts. A comprehensive collection of such cases may be found in the Annotation, 71 ALR2d 77, 82.

The course for this court to follow depends entirely upon policy considerations. On the one hand are the established rules of contract law, which, this court has frequently observed, apply to releases,[2] and on the other are the considerations which have led courts to treat releases as *sui generis* and inferentially, therefore, to be freely set aside. As Dean Wigmore says: "In general, the modern trend is to lay down no one or more rules of thumb, but to develop a special doctrine in each Court for that class of cases, liberally relieving the party who has signed the release." 9 Wigmore, Evidence (3d ed, 1940) 55, § 2416. See, also, Comment, *Effect of the Personal Injury Release on Further Recovery in California,* 42 Cal L Rev 161, 164.

---

[2] See cases discussed in Pokorny v. Williams, 199 Or 17, 260 P2d 490. See, also, Springer v. Powder Tool Corp., 220 Or 102, 110, 348 P2d 1112, where we reaffirmed this court's commitment to the objective theory of contracts.

■ Returning to the release before the court, the law in this jurisdiction does not permit contracts to be reformed merely because of uncommunicated mental reservations held by one of the parties at the time of execution. *Pokorny v. Williams,* note 2, supra; *Rushlight Co. v. City of Portland,* 189 Or 194, 219 P2d 732; 1 Williston, Contracts (3d ed, 1957) 338, § 94; Restatement, 1 Contracts 74, § 71 (1932). No policy reason has been suggested for abandoning well-settled rules of law in order to permit reformation in this case.

■ We turn, then, to the plaintiff's major contention, that she should be allowed to rescind the release because of mutual mistake. Since she now has incurred substantial medical expenses, far beyond her contemplation when she signed the release, she understandably says she was mistaken. She also urges that the insurance adjuster was mistaken or he would have paid more than $500 for the release. There is little reason to doubt the truth of this assertion.

We assume, therefore, that the plaintiff would have asked and the insurer would have paid more for the release if the parties had known that the plaintiff was suffering from a ruptured disc instead of from supposedly less serious back injuries. The courts which have granted relief from premature releases in such cases have talked in terms of mutual mistake. The decisions recognize that ordinarily mistaken opinions, or bad guesses about future possibilities, do not constitute the kind of mutual mistake that will make a contract voidable at the option of either party. However, the courts following the policy of treating improvident releases as voidable apparently are guided by these factors: (a) the peculiar dignity the law accords the human person, as distinguished from ar-

ticles of commerce; (b) the very real possibility of being mistaken about the long-range effects of damage to human tissue; and (c) the inequality of the bargaining positions of the contracting parties.

Such cases simply hold that it is not fair to an injured tort victim to hold him to a bargain if it turns out later that the bargain was grossly unwise. The reasons mentioned above, while undeniably sound reasons for scrutinizing releases carefully for fraud or over-reaching, may prove too much when applied to bargains made advisedly and with the express purpose of shifting the burden of risk in exchange for a prompt payment of cash.

When courts recite, for example, as a matter of more or less common knowledge, that terminal tumors sometimes begin with minor contusions, or otherwise concern themselves with details of tragedy that may stalk those who sign early releases, they are not announcing truths known only to lawyers. These matters are also commonly known by laymen.

The release in this case was signed with a complete understanding, insofar as the document itself and other evidence shows, that for $500 cash in hand the plaintiff was willing to assume whatever risks might lurk in the settlement of her personal injury claim. If the release in this case can be avoided, then no release in Oregon will be final until the statutes of limitations have run their course.

Heretofore this court has considered the settlement of claims prior to litigation to be in the public interest. In the redress of wrongs between motorists, we follow adversary procedure in court when settlement is not otherwise made. There is no reason in principle why an improvident settlement made before trial is any more to be set aside than a judgment rendered upon a ver-

dict that hindsight later proves to have been obtained too soon and for too little. No one has suggested that judgments in personal injury cases should be kept open like claims under the Workmen's Compensation Act for additional awards in the event of aggravation (ORS 656.276).

As noted, there are attractive policy reasons for adopting a rule that would permit perfectly honorable releases to be repudiated in the event of aggravation of an injury or the discovery of undiagnosed injuries. There are less compassionate but equally sound policy reasons for requiring persons of legal age and capacity to contract to stand by their covenants, including bargains containing an element of chance. We reaffirmed the general rule with reference to the stability of untainted release agreements as recently as the case of *Pokorny v. Williams,* 199 Or supra at 33, where we relied upon *Broad v. Kelly's Olympian Co.,* 156 Or 216, 66 P2d 485. See, also, *Reinhardt v. Weyerhaeuser Timber Co.,* 144 F2d 278 (9th Cir 1944). We are not now disposed to overrule those cases.

Accordingly, while we are mindful of the trend elsewhere toward treating releases as binding only when they do not result in hardship, we believe that our own decisions and previous choices of competing policy considerations require us to reject mere improvidence as a plausible ground for setting aside otherwise unimpeachable contracts.

■ As we said through Mr. Justice Lusk in another context:

"No fraud or mistake or lack of business acumen or inability to understand the English language is claimed in this case * * *. It may be that it is a hardship case from the standpoint of the defendant, but courts are not authorized because of harsh

consequences to rewrite the terms of a contract."
*Ramsay Signs, Inc. v. Dyck,* 215 Or 653, 337 P2d
309.

Reversed with instructions to enter a decree dismissing the complaint; neither party to recover costs.

SLOAN, J., dissenting.

I dissent.

It may be that the evidence in this case is not so clear and convincing as it should be to sustain plaintiff's case. If that were the basis of the decision, I would probably concur in the result. However, this is a case in which a view of the witness may be equally important with the words said. The trial court's findings, therefore, should be sustained. The pertinent ones are:

"II.

"At the time of the accident plaintiff was under the care of George McGowan, M. D., for an existing pregnancy. After the accident plaintiff went to Dr. McGowan for diagnosis and treatment of the injuries resulting from the accident. Dr. McGowan did not diagnose the case as involving a ruptured disc, took no x-rays, and advised plaintiff and her husband that plaintiff sustained sacroiliac and lumbar strains, and that her pain would continue until her pregnancy was completed.

"III.

"With the permission of plaintiff and at the request of Mr. H. L. Young, agent of the Western Pacific Insurance Company representing the defendant herein, Dr. McGowan furnished the insurance company with a report which contained the following prognosis:

'Apparently good. However, I feel her back and hip will continue to be painful until pregnancy is completed.'

\* \* \* \* \*

"V.

"At the time of the execution of the release neither plaintiff, nor her husband, nor Mr. Young, was aware of the disc involvement. No other injuries were discussed or suspected and all parties concerned relied on Dr. McGowan's diagnosis and prognosis and regarded the injuries temporary and fully covered by his report.

"VI.

"Plaintiff read and understood the release but intended releasing only her claim for the sacroiliac and lumbar strains.

"VII.

"The question of liability was at no time discussed between the parties and the execution of the release was not the result of a compromise on that issue.

"VIII.

"At the time of the execution of the release all parties concerned were mistaken as to the nature and extent of the injuries sustained by plaintiff as the result of the accident."

In any other area of the law that I am familiar with those findings would be sufficient to allow rescission of a contract. But assume that the insurance adjuster was not mistaken. It could not be said that he had knowledge for that would then be evidence of fraud. If he were not mistaken and did not know, then he must have been indifferent. He was only interested in buying a release at the lowest price possible. Certainly, a legitimate interest. But that does not deny plaintiff relief.

I certainly do not intend to exhaust this subject; only to introduce some of the established rules that guide the courts in other cases where a party acting in good faith, mistakenly enters into some form of transaction that we call a contract. Plaintiff in this

case did not act improvidently. She acted in good faith on the advice of the doctor in which she had a right to rely.

"Suppose, first, a case in which a bidding contractor makes an offer to supply specified goods or to do specified work for a definitely named price, and that he was caused to name this price by an antecedent error of computation. If, before acceptance, the offeree knows, or has reason to know, that a material error has been made, he is seldom mean enough to accept; and if he does accept, the courts have no difficulty in throwing him out. He is not permitted 'to snap up' such an offer and profit thereby.* If, without knowledge of the mistake and before any revocation, he has accepted the offer, it is natural for him to feel a sense of disappointment at not getting a good bargain, when the offeror insists on withdrawal; but a just and reasonable man will not insist upon profiting by the other's mistake.* There are now many decisions to the effect that if the error was a substantial one and notice is given before the other party has made such a change of position that he can not be put substantially in statu quo, the bargain is voidable and rescission will be decreed.* 3 Corbin on Contracts, 1951, Section 609, 680-682. (Footnotes omitted).

"It is the rule in general that a contract will not be reformed for a unilateral mistake,* nor does such a mistake, of itself render the transaction voidable.* However, equitable relief by way of rescission may be given if the mistake relates to a material feature of the contract, if it is of such grave consequence that enforcement of the contract as made will be unconscionable, if it occurred notwithstanding the exercise of ordinary diligence by the party making the mistake, and if the other party can be put in statu quo.*" 3 Pomeroy's Equity Jurisprudence, 1941, Section 870a, 388. (Footnotes omitted).

"Here the consequence of the mistake is not the failure to express an intended agreement (in which case the failure might be rectified), but the entering into any bargain at all, in view of the circumstances. To rescind the transaction is, therefore, the only available remedy. An agreement for the sale of a bar of metal, understood to contain a certain proportion of silver illustrates this kind of mistake. Through an error in the assay of the metal, on the strength of which the bargain was made, the parties acted under a mistake; there was less silver than they supposed. It was held that on tendering back the bar, the buyer was entitled to recover the money he had paid.* It will be noticed that there was here an actual sale of the bar in question. There was a clear expression of assent to the sale of that particular bar. The case, therefore, is one of rescission of a sale on equitable grounds." Williston on Sales, 1948, Section 656, 514-515. (Footnotes omitted).

And see *M. F. Kemper Construction Co. v. The City of Los Angeles,* 1951, 37 Cal2d 696, 235 P2d 7, in which the court canceled a firm construction bid for a mistake on the part of the bidder even though the official bid form provided bidders, "will not be released on account of errors." The case is not fully in point, but the analysis made by the court is akin to the case at bar. See note on the Kemper case at 100 Pa L Rev 753. It goes without saying that defendant in this case can readily be returned to status quo.

It seems apparent then that equity will relieve a person from a contract such as this in a variety of circumstances when that person in good faith gets his foot in a trap. The horror expressed by the majority that this plaintiff wants to renege on her contract must be motivated by the precise nature of this particular contract. Similar revulsion has not been

expressed by the courts and authorities when relief is sought from other forms of contract for the very same reasons.

The judgment should be affirmed.